THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

[Cite as *State v. Davis* (1991), 62 Ohio St.3d 326.]

(No. 90–1070—Submitted September 10, 1991—Decided December 31, 1991.)

328

332

*Gregory A. White*, Prosecuting Attorney, and *Jonathan E. Rosenbaum*, for appellee.

*Randall M. Dana*, Public Defender, *David C. Stebbins* and *Richard J. Vickers*, for appellant.

*Per Curiam.*

I

In his first proposition of law, appellant contends that the trial court erred in permitting the jury to consider "other acts" evidence through the opening statement of the prosecutor and the testimony of Donald Kendall and Alvin Powell. Each of these references concerned the participation of appellant in narcotics trafficking.

With respect to the opening statement of the prosecutor, we have previously held that such remarks are not testimonial evidence and may not be considered as such. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912. In accordance with 4 Ohio Jury Instructions (1988) 43, Section 405.10(1), the trial court appropriately instructed the jury that opening and closing statements do not constitute evidence. Counsel for appellant objected neither to the statement nor to the jury instructions relative thereto. Accordingly, any error resulting therefrom is waived unless it constitutes plain error. See *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. Inasmuch as the statements of the prosecutor conformed to the evidence subsequently adduced, plain error would result, if at all, only if it may be determined that such evidence was improperly admitted. See, generally, *Maggio, supra.*

The evidence at issue involves the testimony of Kendall and Powell. An essential element of appellant's case was that he was not present in Elyria at the time of the murders. The testimony of Kendall established the prior association between Krebs and appellant and his occupation as a "hit man." Moreover, both Kendall and Powell placed appellant in Elyria during the crucial period. In the course of their testimony both Kendall and Powell made reference to the multiple purposes which motivated appellant to travel to Elyria. One of the purposes was to further the narcotics enterprises of Krebs and appellant. Accordingly, reference was made to other criminal acts committed by appellant which were not charged in the indictment. Admission of such evidence is governed by Evid.R. 404(B). It provides:

"Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*" (Emphasis added.)

In *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, this court addressed the scope of Evid.R. 404(B). As stated in paragraph one of the syllabus:

" * * * The rule and the statute [R.C. 2945.59] contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. (*State v. Flonnory* [1972], 31 Ohio St.2d 124, 126, 60 O.O.2d 95, 96–97, 285 N.E.2d 726, 729, followed.)"

Moreover, in *State v. Jamison* (1990), 49 Ohio St.3d 182, 185, 552 N.E.2d 180, 183, this court, quoting *Barnett v. State* (1922), 104 Ohio St. 298, 135 N.E. 647, observed as follows:

" ' * * * "Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and is none the less competent evidence because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove * * *." ' *Id.* at 303, 135 N.E. at 649."

The threshold criterion is whether the other acts evidence can show by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Inasmuch as appellant had previously filed a notice of alibi, it was necessary for the state to prove precisely that appellant was in Elyria at the time the murders were committed. The state also showed by this testimony that appellant needed money, and that the absence of incriminating evidence at the scene could have been related to his experience as a hit man. The testimony of both Kendall and Powell was relevant to show appellant's plan, preparation, identity, and opportunity.

Even though appellant's focus is on the acts that did not deal directly with the murder, there is no question that the evidence is relevant and was properly admitted as other acts testimony that pointed to the culpability of appellant. Accordingly, this proposition is not well taken.

## II

In his third proposition of law, appellant contends that he was deprived of due process of law because of various rulings by the trial court. His initial contention challenges the decision of the trial court to permit the introduction of other acts evidence through the testimony of Powell and Kendall. In addressing the first proposition of law urged by appellant we determined that admission of such evidence did not violate Evid.R. 404(B). We likewise

conclude that the testimony did not effect a deprivation of life or liberty without due process of law.

Appellant further maintains that the trial court erred in failing to provide a limiting instruction to the jury regarding the "other acts" evidence. However, Crim.R. 30(A) provides in relevant part:

"A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Having failed to request a limiting instruction, appellant has waived this issue for purposes of appeal.

Appellant also contends that the trial court failed to properly ensure that prospective jurors were not influenced by exposure to media accounts of the trial. However, on at least three separate occasions the prospective jurors or the jury was admonished to avoid contact with or influence by accounts of the trial contained in newspapers or the electronic media. This contention is therefore without merit.

Appellant further challenges the decision of the court to excuse potential jurors without a challenge by counsel because the court believed that jurors would be impaired because of their religious beliefs. The authority of a trial court to excuse a juror on the basis of bias irrespective of challenge by either party has been previously recognized by this court. See *State v. DePew* (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 549, and *State v. Rogers* (1985), 17 Ohio St.3d 174, 177–178, 17 OBR 414, 417–418, 478 N.E.2d 984, 989–990.

In the case at bar, appellant objects to the trial court's excusing for cause prospective juror Frances Cooper after the state stated that it was satisfied with the juror. Cooper, during voir dire, conditioned and qualified her remarks when asked if she could follow the law and not place her personal feelings above her duties. Her responses were equivocal enough for the court to be justified in excusing her. See, also, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 184, 15 OBR 311, 328, 473 N.E.2d 264, 284–285.

Appellant also claims that the trial court erred by limiting the questions on voir dire to a potential juror's feelings on the death penalty and "influence from the media." Defense counsel did not object but instead agreed to this limitation. There is no evidence that the trial court abused its discretion in so limiting the voir dire inquiry and certainly there is no plain error.

Additionally appellant complains about the trial court's refusal to have the transcript of Powell's testimony reread to the jury. *State v. Berry* (1971), 25

Ohio St.2d 255, 54 O.O.2d 374, 267 N.E.2d 775, paragraph four of the syllabus, states:

"After jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness * * *."

This is clearly a question of discretion on the part of the trial court. No abuse of discretion has been shown.

Appellant also challenges the decision of the trial court to withhold a grant of immunity to defense witnesses Middleton, Rodak (and Connone) and its initial *ex parte* discussions with counsel for the state regarding the testimony of Andrew Settas. These issues will be discussed *infra* in conjunction with our discussion of the sixth and fourteenth propositions of law advanced by appellant.

Finally, appellant claims error by the court's limitation of closing argument to seventy minutes. A court is permitted to limit closing argument within its sound discretion. *State v. Jenkins, supra.* This court in *Jenkins* discussed five criteria that should be considered in this respect:

"(1) The circumstances of the case, (2) the gravity of the offense, (3) the number of witnesses examined, (4) the volume of the evidence, and (5) the time consumed by the trial." *Id.* at 221, 15 OBR at 360, 473 N.E.2d at 313. Here there was no evidence of abuse of discretion. This case was basically uncomplicated with a manageable number of witnesses and an average amount of evidence for a capital trial. The seventy-minute closing argument was adequate. A careful review of this argument leads to the unmistakable conclusion that appellant was not limited in presenting all his defenses and thoroughly arguing his case.

Accordingly, appellant's third proposition of law is hereby overruled.

### III

In his fifth proposition of law appellant contends that the trial court incorrectly instructed the jury that it may not consider sympathy in its deliberations. This argument was considered and rejected in *State v. DePew, supra,* at 290, 528 N.E.2d at 558; *State v. Jenkins, supra;* and *State v. Steffen* (1987), 31 Ohio St.3d 111, 125, 31 OBR 273, 285, 509 N.E.2d 383, 396. Accordingly, this proposition of law is overruled.

### IV

Appellant in his sixth proposition of law alleges the trial court erred in not ordering the prosecutor to grant immunity to a defense witness who refused to testify on Fifth Amendment grounds.

In *State v. Landrum* (1990), 53 Ohio St.3d 107, 120, 559 N.E.2d 710, 725, this court noted that "Ohio trial courts do not have authority to grant nonstatutory use immunity to a defense witness at an accused's request." Accordingly, this proposition of law is without merit.

## V

Appellant in his seventh proposition of law asserts that the trial court erred in not requiring the state to produce the results of polygraph examinations administered to three of the state's witnesses.

The specific issue is whether the state is required to provide, through discovery, the results of polygraph tests that were performed on persons other than the defendant or any co-defendant(s). The criteria for the admission, as opposed to the discovery, of the results of polygraph examinations have been set forth by this court in *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318. However, the instant case involves the discovery and not the admissibility of polygraph results.

Appellant argues that a polygraph examination is a "scientific test" and is discoverable pursuant to Crim.R. 16(B)(1)(d), which provides:

"Reports of Examination and Tests. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or report of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case * * *."

Appellant argues that this court in *Souel, supra,* at fn. 4, stated that a polygraph is a scientific test and hence is discoverable. This argument is not well taken. *Souel* held that there is sufficient scientific acceptance for admissibility if all parties stipulate to the admission of the results. *Souel* held that, regardless of the admission of the polygraph test results, that particular case contained sufficient evidence to justify the conviction.

The nature of polygraphs is different from traditional scientific tests. Most, if not all, scientific tests involve objective measurements, such as blood or genetic typing or gunshot residue. In a polygraph test, the bodily response of the examinee to his answers is dependent upon the subjective interpretation thereof by the examiner. Inasmuch as the test is not perceived by the profession to be reasonably reliable, its admissibility is limited in Ohio to situations where the parties stipulate to its admission. *Souel, supra.*

Appellant has cited several cases in which new trials have been granted when it was discovered that the state possessed and did not provide, through discovery, evidence that the witnesses had been shown to be untruthful.

Those cases all involved *Brady* violations (*Brady v. Maryland* [1963], 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215) where it was discovered after trial that evidence beneficial to the defense had been withheld by the state. Appellant argues that if he had had the results of the polygraphs, they could possibly have led to other evidence that could assist his defense. Such reasoning is too speculative. This court has never held that a defendant is entitled to the results of polygraph examinations, nor has this court held that polygraph examinations are scientific tests which are discoverable pursuant to Crim.R. 16. Accordingly, this proposition is not well taken.

## VI

In his eighth proposition of law, appellant contends that the trial court erred in the admission of impermissible hearsay evidence.

The evidence admitted was uncertified copies of booking sheets of the defendant and Alvin Powell from an Illinois jail/courthouse. No records custodian or representative from the Illinois office testified to establish a proper foundation for admission and to authenticate the documents. The booking sheets were prepared by the Illinois jail which housed appellant and Powell at one time.

One of the booking sheets contained the physical description of appellant at the time he was booked. Appellee argues that this record is admissible because the police officer who obtained the booking sheet from the Illinois authority testified that all police departments maintain booking sheets and that the sheet was a true and accurate copy of the record provided to him. He also testified that other police departments have similar forms. Appellee further argues that, according to 1 Weissenberger, Ohio Evidence (1991) 76, Section 803.79, the custodian of the records does not have to lay the foundation as long as the witness is sufficiently familiar with the operation of the business and with the circumstances of the records preparation.

While this court has not previously addressed the issue, federal courts which have interpreted the analogous federal rule have concluded that the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document. Thus, it has been observed:

"While the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made, *United States v. Evans*, 572 F.2d 455, 490 (5th Cir.1978), he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." *Dell Publishing Co., Inc. v. Whedon* (S.D.N.Y.1984), 577 F.Supp. 1459, 1464, fn. 5. See, also, *Tashnizi v. Immigration & Naturaliza-*

*tion Service* (C.A.5, 1978), 585 F.2d 781, 783, fn. 1; *United States v. Hathaway* (C.A.6, 1986), 798 F.2d 902, 906.

In the case at bar, the state sought to lay the foundation for admission of records maintained by the Illinois prison system through the testimony of an Ohio police officer. The police officer possessed no knowledge of the internal record maintenance system employed by an Illinois state agency. His testimony was limited to the fact that he obtained the record therefrom. Therefore, the record was improperly admitted since no proper foundation was laid by a proper custodian or witness sufficiently familiar with the operation of the business. However, this was harmless error because other proper evidence was admitted showing appellant's physical description at the time of the murders. Alvin Powell testified as to appellant's physical description at the time. Also, Donald Kendall identified a picture of appellant that was obtained from the Illinois prison system. Accordingly, this proposition is not well taken.

## VII

In his ninth proposition of law, appellant contends that the trial court erred in the admission of several hearsay statements.

Kendall testified that he overheard a conversation between Krebs and Piazza regarding their arrest. Kendall testified that Krebs told him that Piazza set him up and that he (Krebs) was going to get even.

Both of these statements were properly admitted by the trial court. The statement by Krebs to the effect that Piazza set him up does not constitute hearsay inasmuch as it was not admitted for the truth of the matter contained therein. The statement was not offered for the purpose of establishing that Piazza did, in fact, subject Krebs to criminal liability. Whether Piazza did or did not engage in this conduct is wholly irrelevant to the issues involved in the present case. Rather, the crucial inquiry is whether Krebs *believed* that Piazza had acted to implicate him for engaging in criminal activity. The statement therefore serves to establish the motive of Krebs to contract for the death of Piazza.

With respect to the statement of Krebs communicated to Kendall that he would, in essence, get even with Piazza, such evidence is hearsay. However, it constitutes admissible hearsay pursuant to Evid.R. 803(3) inasmuch as it reflects the then-existing state of mind of the declarant.

Accordingly, the ninth proposition of law advanced by appellant is overruled.

## VIII

In his tenth proposition of law, appellant objects to the admission of an investigative document on the basis of hearsay.

The evidence at issue was a copy of an investigative report prepared by the Drug Enforcement Administration and found in the home of Krebs.

The document contained, among others, the name of Charles Piazza. A cooperating individual is referred to as providing information to the DEA. This individual is not identified, but Piazza's name is among the list of persons to be indexed.

The existence of this document and Krebs's possession of it were relevant to the state's case and supported the testimony of Kendall and Powell who stated that Krebs had a vendetta against Piazza. Even though the document did not refer to Piazza as an informant, it was significant because of Krebs's belief that Piazza had set him up. Piazza's name in a DEA report could have, in Krebs's mind, confirmed his suspicions. Contrary to the argument of appellant, the document was not hearsay evidence introduced to prove the truth of the matter asserted. It was introduced to show Krebs's knowledge and state of mind. It provided a possible reason why Krebs would have a vendetta against Piazza. Accordingly, this proposition is not well taken.

## IX

Appellant in his eleventh proposition of law alleges that his conviction is against the manifest weight of the evidence. His argument focuses on the statements and testimony of Kendall, Powell, and Settas and the alleged inconsistencies presented thereby.

The inconsistencies in Kendall's statements and testimony were insignificant. He stated to Lorain County police detectives that when he came to work on March 2, there were "guys from Illinois * * * out in back of * * * the carpet shop next door"; that one of the persons looked to be about thirty-five and the other in his late forties; and that the older man had red hair and was named "Al," and did not wear glasses. At trial, Kendall testified that appellant and another man were sitting at his body shop when he arrived.

In regard to Powell, Powell first told detectives appellant had been in Ohio about May 12 or 13 and he denied knowing Kendall. He also denied hearing the name "Chuckie" (Piazza). Later, after being transferred to a high security prison, Powell was again approached by detectives and this time he stated that he had bailed appellant out of jail in Illinois on April 29, 1983. Appellant also attacks Powell's testimony that he and Davis went to Missouri on April 29, arguing that it would be impossible to then travel to Ohio by May

2. The last contradiction identified by appellant is that, in the course of the same interview given to detectives, Powell later admitted that he had heard a discussion concerning "Chuckie."

Appellant next directs our attention to the difference in the testimony of Powell and Kendall in regard to the time that appellant arrived in Elyria on May 2. Powell testified that he and appellant arrived in Elyria at about 6:00 p.m., but Kendall testified he, Krebs and Davis met that morning. There were also other inconsistencies of minor significance.

This court held in *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.3d 366, 227 N.E.2d 212, at paragraph one of the syllabus, that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." Here, although there were some inconsistencies in the statements of the witnesses and their testimony, these inconsistencies were fully explored on cross-examination but ultimately resolved in the favor of the state. The evidence was sufficient to convict appellant. The eleventh proposition of law urged by appellant is therefore meritless.

## X

In his twelfth proposition of law, appellant contends that the trial court erred when it excused juror Carmen Ragnoni.

R.C. 2945.25(C) states that a person may be challenged for cause, " * * * in the trial of a capital offense, [on the basis] that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. * * *"

In *State v. Rogers, supra,* 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, this court held in paragraph three of the syllabus: "The proper standard for determining when a prospective juror may be excluded for cause based on his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath."

Ragnoni on several occasions expressed to counsel that her views on capital punishment precluded her from following the law and imposing the death penalty. Accordingly, the trial court did not err when it excused her as a prospective juror. The twelfth proposition of law urged by appellant is therefore overruled.

## XI

Appellant in his thirteenth proposition of law alleges that the trial court failed to consider his offered mitigating evidence.

The factors that appellant claims were not considered by the trial court concerned his personal family relationships and activities, including his dual status as a good father and a veteran with an honorable discharge.

There is no evidence that the trial court did not consider these factors; instead, the court simply did not find them to be mitigating. Even though a defendant has wide latitude to introduce mitigating evidence, the fact that an item of evidence is admissible under R.C. 2929.04(B)(7) does not mean that it must be given any weight. *State v. Steffen, supra,* 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, at paragraph two of the syllabus.

Accordingly, simply because the offered factors were not accepted does not indicate that they were not considered by the trial court. Moreover, this court independently weighs the mitigating factors against the aggravating circumstances of the crime. That review can negate any claim of error in previous reviews. *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. This proposition of law is therefore without merit.

## XII

In his fourteenth proposition of law, appellant alleges that he was deprived of a fair trial because the court conducted an *ex parte, in camera* hearing with the prosecutor.

The hearing was requested by the state after one of its witnesses, Settas, testified. The prosecutor suspected that Settas was not being truthful in his testimony. The state told the court what was omitted from Settas's testimony and asked for the court's guidance in order to ensure that appellant was given a fair trial.

The *ex parte* conference with the trial judge was merely calculated to obtain a ruling regarding the obligation of the state to disclose the information withheld. Once the ruling was made, the information was disclosed to the defense, which was afforded an ample opportunity to inquire on cross-examination of the witness regarding any discrepancies in his testimony.

All discussions regarding this issue were conducted on the record and the record was available for review by counsel for appellant. Accordingly, no prejudicial error exists. The fourteenth proposition of law is therefore overruled.

## XIII

Appellant in his fifteenth proposition of law alleges that he was deprived of a fair trial because the trial court during the penalty phase enumerated all the

mitigating factors contained in R.C. 2929.04(B), although appellant only presented evidence involving "other factors" under R.C. 2929.04(B)(7).

This court held in *State v. DePew, supra,* 38 Ohio St.3d at 289–290, 528 N.E.2d at 558: " * * * In this case, the trial court read all the statutory mitigating factors to the jury but made no comment on the factors that were not presented by appellant. This was certainly not prejudicial error, though the better practice is certainly to refrain from even referring to mitigating factors not raised by the defendant."

The trial court here similarly made no comment on the factors not raised by appellant. In addition, the court instructed that all these factors need not be present before the jury could find that the aggravating circumstances are not sufficient to outweigh the factors in mitigation of the sentence of death. Appellant argues that by reading all of the mitigating factors, the trial court improperly converted mitigating factors into nonstatutory aggravating circumstances. There is simply no evidence to support this allegation.

Accordingly, this proposition is not well taken.

## XIV

Appellant in his sixteenth proposition of law states that he was denied a fair trial by the court's failure to record some side bar conferences.

Appellant, other than making inferences, has failed to specify what crucial discussions were left unrecorded. Rather, the essence of his argument is that, because some side bar conferences were not recorded, prejudicial error exists *per se.*

App.R. 9(C) provides relief for anyone who believes there have been crucial unrecorded side bar conferences. It provides in relevant part: " * * * [T]he appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection" to make a record complete. Appellant, having failed to follow this procedure, is left with unsubstantiated allegations, and has thereby waived his rights of review. *State v. Brewer* (1990), 48 Ohio St.3d 50, 60–61, 549 N.E.2d 491, 502; *State v. Tyler* (1990), 50 Ohio St.3d 24, 41, 553 N.E.2d 576, 596. Accordingly, this proposition is not well taken.

## XV

Appellant in his seventeenth proposition of law alleges that the trial court allowed the introduction of inflammatory, duplicative, and gruesome photographs and photographic slides.

There exists some dispute regarding exactly which photographs were admitted. The slides were contained in a carousel and, while they were being introduced, were not identified by the state. Appellant claims that twenty-two slides and twenty-nine photographs were introduced. The state claims that only twelve slides were introduced. The transcript only reflects that at the most fifteen or sixteen slides were admitted. All the photographs and slides were admitted without objection and appellant has failed to show plain error.

Although appellant claims that the photos were gruesome and inflammatory, he failed to specify which ones he considers objectionable. The coroner's slides depict close-ups of the victims' faces and do show some blood and edema. There are some scene photographs that show the same shots. Some of the photographs are of the same area of the bodies but are shot from different angles. Although some of the photographs show gunshot wounds, they illustrate the purposeful intention behind the murders and support the testimony of the witnesses on the scene and of the coroner.

Paradoxically, the cold brutality exhibited by the manner in which the execution-style murders were conducted has served to diminish the inflammatory nature of the photographic depictions of the victims. We therefore conclude that such evidence is relevant and that the danger of material prejudice is outweighed by its probative value. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. Moreover, although some of the photographs are repetitive, "the mere fact that there are numerous photos will not be considered reversible error unless the defendant is prejudiced thereby." *State v. DePew, supra,* 38 Ohio St.3d at 281, 528 N.E.2d at 550.

Accordingly, this proposition of law is not well taken.

## XVI

Appellant in his eighteenth proposition of law argues that the death sentence is inappropriate due to the large number of errors.

This proposition is merely a restatement of previous propositions of law. Inasmuch as the other propositions are not well taken, their cumulative effect cannot be error. Accordingly, this proposition is rejected.

## XVII

Appellant in his nineteenth proposition of law alleges that the trial court erred when it failed to conclude that his rights were violated when he was arraigned without the assistance of counsel.

Appellant pled not guilty at the arraignment. Had he pled guilty this possibly could be an issue. Although his right to have an attorney present was not enforced, he has suffered no deprivation by entering a not guilty plea.

Appellant relies primarily on *Hamilton v. Alabama* (1961), 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. However, *Hamilton* turned on the crucial nature of arraignment under Alabama law, where defenses are lost when not raised at arraignment. Appellant also relies on *State v. Orr* (1985), 26 Ohio App.3d 24, 26 OBR 192, 498 N.E.2d 181. However, in *Orr*, the defendant was prejudiced by signing a waiver of his right to a speedy trial, and later pleading no contest.

Appellant has failed to show how he was prejudiced or lost any crucial rights. Accordingly, this proposition is rejected.

## XVIII

Appellant, in his second proposition of law, alleges that he was denied the effective assistance of counsel during voir dire as well as during the guilt and penalty phases of the trial.

With respect to voir dire, appellant states counsel was ineffective because he failed to file a pretrial motion challenging the constitutionality of Ohio's death penalty statute. Such a motion was not critical. This court has held the statute to be constitutional. *State v. Jenkins, supra.* The second claim of ineffective assistance of defense counsel during voir dire concerns the question posed to two jurors which inquired whether they could "*recommend* the death penalty*" for someone. (Emphasis added.) Appellant contends this question served to minimize in the minds of the jurors their responsibility.

This argument is not well taken inasmuch as this court has held in *State v. DePew, supra,* at 280, 528 N.E.2d at 550, that the use of the word "recommend" is not error provided that it correctly states the law.

Appellant also alleges error because counsel told the jurors they should not automatically disbelieve the state's witnesses. Appellant argues that this statement was unnecessary and somehow, without explanation, shows deficient performance by defense counsel. This statement appears to be merely an attempt by counsel to be candid, and does not constitute ineffective assistance of counsel.

In regard to the guilt phase, appellant complains of his counsel's failure to object to the trial court's limitations on voir dire and failure to maintain a complete record. (This latter issue was addressed *supra*, at Part XIV.)

With respect to the voir dire limitation, appellant asserts that his counsel failed to object. The specific area that he allegedly wished to pursue was the

prospective juror's ability to consider mitigating factors and mitigating evidence. The court of appeals below concluded that appellant had failed to support this argument or demonstrate that the limitation imposed by the trial court constituted an abuse of discretion. We agree. A review of the entire voir dire fails to disclose any abuse of discretion. Accordingly, the failure to object to such limitations cannot constitute ineffective assistance of counsel. The second proposition of law urged by appellant is therefore overruled.

## XIX

In his fourth proposition of law appellant contends that he was deprived of the effective assistance of counsel because of the failure of his trial attorney to challenge for cause or employ peremptory challenges with respect to jurors who he claims were predisposed to impose the death penalty.

However, a review of the responses of these jurors discloses that, in every instance, they were capable of setting aside their personal feelings regarding the death penalty and to apply the law provided by the trial court to the facts of the case.

Appellant next alleges that his counsel erred by not determining whether the prospective jurors would consider mitigating evidence. The trial court limited the inquiry to the juror's feelings on the death penalty and influence from the media. Appellant is contesting his counsel's acquiescence to these limitations. In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the court held that in order to show defective performance: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

Appellant's argument focuses on the general principle that before recommending the death penalty, the jury must not be precluded from considering relevant mitigating factors. See *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. Unless a jury is actually precluded from considering mitigating factors, it cannot be said that a defendant is being deprived of his rights during death-penalty proceedings. In the penalty phase, the jurors did receive a proper jury instruction on their duty to consider mitigating evidence.

In addition, the offered mitigating evidence was basically that appellant was a good family man and veteran. Assuming that this court were to find error in this phase, any error can be corrected by this court's independent weighing

process. See *State v. Lott, supra,* 51 Ohio St.3d at 170, 555 N.E.2d at 304, and R.C. 2929.05.

Appellant next argues that counsel failed to make efforts to ensure that some jurors who were against the death penalty were not excused for cause. Appellant cites prospective juror Florence Schwartz, who was dismissed after she stated she could not consider the death penalty. This response is not unlike that given by prospective juror Carmen Ragnoni. Appellant argues that this is a proper response and that "mere opposition to the death penalty is not grounds for dismissal." Refusal to consider the death penalty is a substantial impairment of the ability to perform duties and is grounds for dismissal. See R.C. 2945.25(C) and *State v. Rogers, supra,* 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984.

Inasmuch as this response is a valid basis for excusing a juror (see our discussion of appellant's twelfth proposition of law, Part X, *supra*), the failure to prevent such excusal cannot be considered ineffective assistance of counsel.

Moreover, appellant's counsel tried to rehabilitate the witness when he asked her if she would fairly consider all the penalties. She nevertheless stated that she was against the death penalty. Accordingly, this proposition is not well taken.

## XX

In his twentieth proposition of law appellant contends that the capital sentencing scheme of the state of Ohio is unconstitutional. This proposition of law is overruled on authority of *State v. Jenkins, supra.*

## XXI

In his twenty-first proposition of law appellant argues that the requirement in Ohio that a jury verdict of life imprisonment be unanimous is unconstitutional. This proposition of law is overruled on authority of *State v. Jenkins, supra.*

## XXII

In his twenty-second proposition of law appellant challenges the procedure employed in Ohio to conduct a proportionality review because it includes only those cases in which the death sentence is imposed. This proposition of law is rejected on authority of *State v. Jenkins, supra; State v. Maurer, supra;* and *State v. Steffen, supra.*

## XXIII

Appellant in his twenty-third proposition of law alleges that he was deprived of a fair trial because the court of appeals limited his brief to one hundred twenty-four pages.

Appellant correctly argues that it is necessary to brief issues and alleged errors in order to preserve them for further review in federal court. However, appellant discounts the advantages of succinctness and relevance in appellate advocacy and overlooks the disadvantages of repetitiveness and lack of focus on key issues.

In this regard, the United States Supreme Court in *Smith v. Murray* (1986), 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445, observed as follows:

" * * * [The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." [1]

The length of a brief should relate to what is precisely required to address the issues. See *State v. Bonnell* (1991), 61 Ohio St.3d 179, 185–186, 573 N.E.2d 1082, 1088. The fact that the court of appeals required the public defender to be succinct does not rise to a denial of due process. Accordingly, this proposition is overruled.

## XXIV

In his twenty-fourth proposition of law appellant contends that the Ohio death penalty statute is unconstitutional. This proposition of law is overruled on authority of *State v. Jenkins, supra.*

## XXV

In accordance with R.C. 2929.05(A), this court is obligated to conduct an independent review to determine whether the aggravating circumstances presented by the state outweigh the mitigating factors adduced by appellant.

---

1. To illustrate the wisdom of this observation one need only compare the brief filed with the court of appeals and the brief submitted for our consideration. In contrast to the one hundred twenty-four page limitation ordered by the appellate court, no comparable limitation on the length of the brief filed with this court was prescribed. Free from the constraints imposed below, appellant filed a document spanning two hundred twenty-nine pages. By any qualitative measure, it is impossible to discern what advantage was gained for appellant through resort to one hundred five pages of additional argument.

Appellant was found guilty of aggravated murder for hire for the killing of Piazza in violation of R.C. 2929.04(A)(2) and that the murder was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons in violation of R.C. 2929.04(A)(5). In regard to Edith Schneider, appellant was convicted of killing her for the purpose of escaping detection, apprehension, trial or punishment for another offense committed by the offender in violation of R.C. 2929.04(A)(3) and that the murder was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons in violation of R.C. 2929.04(A)(5).

The mitigating evidence adduced by appellant was submitted pursuant to R.C. 2929.04(B)(7). The subsection permits the presentation of "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

Several family members testified that appellant was a good father and that he was honorably discharged from the Army. Three correction officers from the jail and a deputy sheriff at the courthouse testified that he was a good prisoner. Whatever weight can be assigned to this mitigating evidence is nevertheless outweighed by the aggravating circumstances. This case involves a murder for hire in which two people were killed: the intended victim, Piazza, and an innocent person, Edith Schneider, who unfortunately had been entertaining Piazza at the time. Accordingly, we conclude that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

## XXVI

This court is also required, pursuant to R.C. 2929.05(A), to determine whether the sentence of death imposed herein is appropriate in view of our disposition of other capital cases where the criminal act involved similar circumstances. We conclude that the sentence is appropriate in this case, as it is neither excessive nor disproportionate. Decisions of this court have approved the death sentence in cases involving multiple murder convictions, *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407; *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894, and in the context of murder for hire, *State v. Williams* (1988), 38 Ohio St.3d 346, 528 N.E.2d 910.

The judgment of the court of appeals is therefore affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.