OPINION
Defendant-appellant, Dennis Profitt, appeals his conviction in the Fairfield Municipal Court for assault in violation of Fairfield Codified Ordinances 537.03. The trial court fined appellant $225 plus court costs and sentenced him to one hundred eighty days in prison with one hundred sixty days suspended provided appellant remained on good behavior for two years. Appellant was allowed to serve the remaining twenty days by doing ten days of community service and ten days in jail.
At trial, the parties established the following facts: Robert Simmons ("Simmons") is a driver for Rumpke Trash Collection. Kerri Simmons, Simmons' now estranged wife, left him in March 1995 and has been living with appellant since August 1995.
On May 13, 1996, at about 4:50 a.m., Simmons was operating his Rumpke truck on South Gilmore Road in Fairfield, Ohio, picking up garbage. Simmons had returned empty trash cans to the side of the road and was crossing the street to return to his truck when he noticed a car coming toward him. Simmons testified that as he was crossing the street, the car accelerated, came directly toward him crossing the center line, and intentionally tried to hit him. To avoid being struck, Simmons dove behind his truck and sort of rolled. Simmons testified that the car then stopped and that the driver was looking at him and laughing. Simmons recognized the driver as appellant.
Robert Bales ("Bales") is also a driver for Rumpke Trash Collection, picking up recycling bins. While Bales' route is different from Simmons' route, they do intersect one another around South Gilmore Road. Simmons testified that within thirty to forty seconds of the incident, Bales drove his truck up to Simmons and told him he had witnessed the incident. Bales thereafter drove off. At trial, Bales testified to the foregoing facts but was unable to identify the driver of the car. Both Simmons and Bales testified that they did not know one another socially.
Thereafter, Simmons called 911 from a gas station. It was then 4:55 a.m. Police Officer Michael Rednour of the Fairfield Police Department was not dispatched until 5:28 a.m. The police report made by Rednour on May 13, 1996 made no reference to Bales. Rednour testified that while he would normally try to find out whether there were other witnesses to a crime, he did not recall whether he asked Simmons about the existence of other witnesses. Simmons testified that while he could not remember whether he did or not, he believed he told the officer about Bales.
Appellant was charged with assault on May 16, 1996. Following a one-day trial on October 4, 1996, the jury found appellant guilty as charged. The trial court sentenced appellant on October 17, 1996. This timely appeal followed.
Appellant's first assignment of error reads as follows:
 THE TRIAL COURT ERRED IN THAT THE PROCEEDINGS WERE NOT ADEQUATELY RECORDED.
The record shows that fifteen bench conferences were not transcribed at trial. Under his first assignment of error, appellant first argues that the trial court's failure to record the fifteen bench conferences violated Crim.R. 22, especially in light of the trial court's "verbal Order to put the conferences in the record." We disagree.
We first note that the record does not support appellant's contention that the trial court ordered all bench conferences to be on record. The record shows that prior to the attorneys' opening statements, the trial court made the following statements out of the hearing of the jury. "Will counsel approach the bench? Are we still on the record, let's remain on the record. I would like counsel to * * * break out their hymn books and turn to Rule 608(B)." A bench conference on evidentiary issues then followed. We fail to see how the foregoing statements amount to an order that all bench conferences be recorded.
We also note that appellant has failed to specify what crucial discussions, if any, were left unrecorded. Rather, the essence of his argument appears to be that since fifteen bench conferences were not recorded, prejudicial error exists per se. State v. Davis (1991), 62 Ohio St.3d 326, 347, certiorari dismissed (1992), 506 U.S. 803, 113 S.Ct. 302.
Crim.R. 22 states in relevant part that:
 In serious offense cases all proceedings shall be recorded.
 In petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded, and if requested by any party all proceedings shall be recorded.
Crim.R. 2(D) defines "petty offense" as "a misdemeanor other than a serious offense." Crim.R. 2(C) in turn defines "serious offense" in part as "any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." A violation of Fairfield Codified Ordinances 537.03(A) is a first degree misdemeanor punishable by no more than six months in jail. As such, it is a petty offense pursuant to Crim.R. 2(D).
Crim.R. 22 clearly requires that with regard to petty offenses, all proceedings must be recorded if requested by any party. The record shows that the prosecutor did not move for the bench conferences to be recorded. The record also shows that defense counsel, who is also appellant's counsel on appeal, did not object, nor did he urge the court to record the bench conferences. It is well-established that the "parties bear the responsibility of ensuring that important bench conferences and other discussions of legal matters are properly recorded for use in the event of an appeal." State v. Gray (1993), 85 Ohio App.3d 165,169. In light of all of the foregoing, we find that the trial court's failure to record fifteen bench conferences did not violate Crim.R. 22.
The record shows that on February 14, 1997, appellant filed a motion to vacate his conviction on the ground that because of the unrecorded bench conferences, he had not been tried by a court of record. By entry filed March 5, 1997, this court denied appellant's motion. Twelve days later, appellant filed a statement of evidence pursuant to App.R. 9. By entry filed April 2, 1997, this court struck appellant's proposed statement on the ground that it had neither been agreed to by opposing counsel nor submitted to the trial court for approval as required by App.R. 9. Unabated, appellant then filed a motion to reconsider or in the alternative to allow the trial court to approve appellant's proposed statement. By entry filed May 15, 1997, this court granted appellant thirty days to obtain the trial court's approval of the proposed statement of evidence and to file the same with this court. Appellant's proposed statement of evidence, which relates the unrecorded bench conferences, was approved by the trial court on June 5, 1997.
Appellant argues, however, that App.R. 9 "is an inappropriate remedy when the trial court inadequately recorded the proceedings." Our response to appellant's argument is two-fold. First, it bears to be repeated that the parties bear the responsibility to ensure that important bench conferences are properly recorded during the proceedings. Gray,85 Ohio App.3d at 169. "The preparation of the record begins, not when the notice of appeal is filed, but, rather, at the commencement of the proceedings in the trial court." Id.
Second, it is well-established that "App.R. 9(C) provides relief for anyone who believes there have been crucial unrecorded side bar conferences." Davis, 62 Ohio St.3d at 347. As we stated in our May 15, 1997 entry, "appellant has not provided this court with any authority which would support his contention that App.R. 9 is inapplicable under the circumstances in this case." Therefore, appellant's first assignment of error is overruled.
Appellant's second assignment of error reads as follows:
 THE TRIAL COURT ERRED IN THAT THE DEFENDANT'S MOTION FOR MISTRIAL AFTER THE JURY SENT A NOTE INDICATING THEY "ARE SPLIT FOUR AND FOUR AND NO INCLINATION TO CHANGE" SHOULD HAVE BEEN GRANTED.
On October 4, 1996, the jury began deliberating late afternoon. After deliberating for a little over an hour, the jury submitted the following note to the trial judge: "Judge Spaeth — The jury would like to know how to proceed when we are split four and four and no indication to change." The trial court gave them a supplemental instruction and sent them back to deliberate. The jury eventually returned a guilty verdict.
Appellant argues that it was prejudicial error for the trial court to send back a deadlocked jury to deliberate when that jury was "hungry." Our response to appellant's argument is two-fold. First, appellant's claim that the jury was hungry and that, as a result, the four jurors in favor of appellant gave up their position is purely speculative. Second, a review of the supplemental instruction given to the deadlocked jury shows that the instruction "encourage[d] a verdict where one [could] conscientiously be reached, * * * [was] balanced, asking all jurors to reconsider their opinions in light of the fact that others [did] not agree," and thus was proper. State v. Howard (1989),42 Ohio St.3d 18, 25, certiorari denied (1989), 439 U.S. 873,110 S.Ct. 203. Appellant's second assignment of error is overruled.
Because appellant's third and fourth assignments of error deal with the same issue, they will be addressed together. Appellant's third assignment of error reads as follows:
 THE TRIAL COURT ERRED WHEN IT PREVENTED THE TESTIMONY OF THE EFFORTS OF THE ALLEGED VICTIM, ROBERT SIMMONS, TO USE THE COURT SYSTEM TO PROSECUTE OR HARASS THE DEFENDANT AS WELL AS THE DEFENDANT'S GIRLFRIEND TO SUPPLEMENT THE ALLEGED VICTIM'S STALKING OF THE DEFENDANT AND THE DEFENDANT'S GIRLFRIEND.
Appellant's fourth assignment of error is as follows:
 THE TRIAL COURT ERRED WHEN IT PREVENTED THE TESTIMONY OF THE EX-WIFE AND ESTRANGED WIFE THAT ILLUSTRATED HOW THE ALLEGED VICTIM USED OR MISUSED THE COURT SYSTEM BY FILING CHARGES AGAINST HIS ENEMIES, TO INCLUDE ESTRANGED AND FORMER WIVES.
Under both assignments of error, appellant argues that the trial court erred by excluding testimony, in particular of Simmons' estranged wife and of Erin Norman, Simmons' ex-wife,[1] regarding Simmons' history of filing numerous lawsuits against appellant and Simmons' estranged and former wives as an harassment tactic. Appellant argues that the trial court should have admitted the testimony under Evid.R. 404(B) as it was "relevant and pertinent to explain why [Simmons] added a witness after failing to have one at the time of the alleged incident when [Simmons] talked to the police officer." Appellant also argues that the testimony was admissible under Evid.R. 404(B) to show Simmons' motive "to prosecute [appellant] * * * to `get even' with [both] his estranged wife [and] appellant."
Evid.R. 404 provides in relevant part:
 (A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, * * *.
* * *
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
It is well-established that because "Evid.R. 404(B) codif[ies] an exception to the common law with respect to evidence of other acts of wrongdoing, [it] must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." State v. Broom (1988), 40 Ohio St.3d 277, 281-282, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089.
It is also well-established that "[t]o be admissible, testimony under [Evid.R. 404(B)] must show acts so related to the offense * * * that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense." State v. Moore (1948), 149 Ohio St. 226, 229. Thus, extrinsic act evidence of motive may be admissible when it is highly probative.
We find that Evid.R. 404(B) is inapplicable in the case at bar for the following reasons. First, we fail to see how the testimony regarding Simmons' history of filing lawsuits against appellant and Simmons' estranged and former wives is highly probative as to why Simmons allegedly fabricated a witness. Second, we find that the attempted use of that testimony was clearly intended to show that because Simmons had in the past filed numerous lawsuits as an harassment tactic, he likely acted the same way in the case at bar, even though appellant argues otherwise. This is an inappropriate use of Evid.R. 404(B). We therefore find that the trial court did not err in excluding the testimony and overrule appellant's third and fourth assignments of error.
Appellant's fifth assignment of error is as follows:
 THE TRIAL COURT ERRED WHEN IT DENIED THE ALLEGED VICTIM'S ESTRANGED WIFE FROM TESTIFYING ABOUT THE VICTIM'S REPUTATION FOR TRUTHFULNESS.
The record shows that while the trial court prevented Simmons' estranged wife from testifying with regard to Simmons' reputation for truthfulness, it did allow Simmons' former wife to testify about Simmons' reputation for truthfulness. Asked if she had had the opportunity to learn about her former husband's reputation for truthfulness in her dealings with him since their divorce, Simmons' former wife testified that his reputation was poor.
Appellant argues that it was error for the trial court to prevent Simmons' estranged wife from testifying, especially in light of McEntire v. McEntire (1923), 107 Ohio St. 510, which appellant cites for the proposition that communications between estranged spouses are no longer privileged. We disagree.
We find that the testimony of Simmons' estranged wife with regard to his reputation for truthfulness was properly excluded pursuant to R.C. 2317.02(D) which states:
 The following persons shall not testify in certain respects:
* * *
 Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist.
We further find that McEntire is factually distinguishable from the case at bar and that its holding is thus inapplicable here. In McEntire, the husband brought an action to enforce an oral separation agreement made between him and his wife outside the presence of any other persons. The Supreme Court of Ohio held that when spouses had been living separate and apart for several months and all marital relations incident to coverture had been abandoned, communications between the spouses regarding the separation agreement were not privileged and the husband was competent to testify on the subject under the authority of former G.C. 11988 which provided:
 The parties, notwithstanding their marital relation, shall be competent to testify in actions and proceedings under this chapter to the same extent that any other witness might.
McEntire, 107 Ohio St. at 523.
The clear import of the foregoing statute is to abrogate the marital privilege in divorce and alimony actions. It was under the authority of this statute that the supreme court permitted the husband to testify. No such statute governs the situation in the case at bar. Moreover, the legislature has not chosen to exempt estranged spouses from the rule of marital privilege as set forth in R.C. 2317.02(D). We therefore hold that the trial court properly excluded the testimony of Simmons' estranged wife with regard to his reputation for truthfulness. Appellant's fifth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Simmons was married to Erin Norman before he was married to Kerri Simmons, his now estranged wife.