Having affirmed the sentence of death imposed by the trial court, in addition to our opinion on the nineteen assignments of error briefed and argued by appellant, we are required by R.C. 2929.05(A) to "review and independently weigh all of the facts and other evidence disclosed in the record" and file a separate opinion stating our findings on the following:
(1) Whether the evidence supports the finding of theaggravating circumstances the trial jury found the defendantguilty of committing.
(2) Whether the sentencing court properly weighed theaggravating circumstances the offender was found guilty ofcommitting and the mitigating factors in the case.
(3) Whether the aggravating circumstances the defendant wasfound guilty of committing outweigh the mitigating factors inthe case.
(4) Whether the sentence is excessive or disproportionate tothe penalty imposed in similar cases.
In appellant's eighth and seventeenth assignments of error, he addresses issues pertinent to the foregoing determination. In addition to addressing the arguments presented by appellant's assignments of error eight and seventeen, we have also made findings below as required by R.C. 2929.05(A).
 (1) Whether the evidence supports the finding of the aggravating circumstances the trial jury found the defendant guilty of committing.
In the present case, appellant was charged with two aggravating circumstances. The aggravating circumstances are: (1) the murder was committed for hire and (2) the victim of the murder was a witness to an offense who was purposely killed to prevent her testimony in a criminal proceeding. We find that a thorough and careful review of the evidence set forth in the record supports the finding of the two aggravating circumstances set forth in the indictment beyond a reasonable doubt.
As we state in our opinion,[1] the record reveals evidence of the following circumstances: Due to her work as a drug informant, Wilma Arnett had become a key witness in the indictment of approximately fifteen people on various drug-related charges. Calvin Davis was one of the persons under indictment for drug trafficking, and had suspected that Arnett was primarily responsible for his indictment. It was adduced at trial that shortly after Arnett's death, all of the pending drug indictments were dismissed by the State.
At appellant's trial, the State elicited testimony that in May of 1994, Calvin Davis told Jermaine Jelks and Tyrone McGhee that because of the impending drug cases they should pay appellant to murder Arnett. Elizabeth Johnson testified that sometime in November or December of 1993, Calvin Davis told her that Arnett had set him up. Johnson testified that Calvin was enraged and that he had told her that "before he gave her any more fuckin' money, he'd have her killed or kill her himself."
Annette Simmons testified at trial that while in the Davis's home, she overheard appellant ask Calvin whether he had "the picture." According to Simmons, Jewel Davis retrieved a photograph of two females. Prior to handing the photograph to Calvin, Jewel tore the picture in half and gave one-half to Calvin, who put it into his pocket, and threw the other half away. Simmons testified that the photograph was that of Wilma Arnett.
Jewel Davis also testified that while at their home, Calvin cut a picture of Arnett and Jewel in half and took the half containing Jewel's picture and threw it away and showed the other half to appellant. According to Jewel, Calvin then put the picture of Arnett into his pocket.[2] Jewel also testified that Calvin had told her that he paid appellant $5,000 to kill Arnett.
Tyrone McGhee testified that on or about 12:30 a.m. on May 10, 1994, while at Walleyes Tavern, appellant entered the bar and approached Calvin. McGhee testified that he overheard appellant tell Calvin that "[t]he snitch is no more" and that "the bitch was hard to die." McGhee also testified that appellant told Calvin that he shot Arnett once and, because she wasn't dead the first time, had to shoot her again. Further, Vance Short, an inmate at the Shelby County Jail, testified that while in jail with appellant, appellant told Short that "I made sure that the bitch got what she deserved."
In conclusion, we find that there were sufficient facts and other evidence for the jury to conclude beyond a reasonable doubt that appellant committed the aggravating circumstances of murder for hire and to prevent a witness from testifying in a criminal proceeding. Clearly, this collection of evidence, if believed, would convince the average mind of appellant's guilt of the aggravating circumstances beyond a reasonable doubt.[3]
 (2) Whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors in the case.
R.C. 2929.04(B) provides that the trial court or the jury must consider and weigh against the aggravating circumstances proved beyond a reasonable doubt the following mitigating factors:
 [T]he nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
 1) Whether the victim of the offense induced or facilitated it;
 2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
 3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
 4) The youth of the offender;
 5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
 6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;
 7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.
In balancing the mitigating factors presented in the instant case against the aggravating circumstances, the trial court found that appellant was one of the principal offenders and that appellant "placed the revolver against the head of the victim and pulled the trigger three times * * * [and] discharged the revolver three additional times into her midsection." The trial court further noted that "the Defendant committed a very brutal and cold-blooded murder for money and to prevent the victim from testifying in other drug related cases." The trial court noted that appellant presented no evidence about his history, character, and background which would mitigate the circumstances of the crime and also took note of appellant's "total lack of remorse." After careful review, the trial court found little or no mitigating evidence in appellant's favor. The trial court concluded that:
 After collectively considering the mitigating factors, the Court concurs with the jury's verdict that the aggravatingcircumstances outweigh any mitigating factors and that the death penalty should be imposed in this case.
Finding nothing improper in the weighing process employed by the trial court, we find that the court properly conducted the analysis as required by the statute.
 (3) Whether the aggravating circumstances the defendant was found guilty of committing outweigh the mitigating factors in the case.
Our thorough review of the record leads us to conclude, beyond a reasonable doubt, that the aggravating circumstances appellant was found guilty of committing outweigh the mitigating factors in this case. We have found nothing in our review of the evidence which convinces us that there exists any mitigating evidence which outweighs the aggravating circumstances in this case.[4]
(4) Whether the sentence is excessive or disproportionate tothe penalty imposed in similar cases.
In addressing whether the sentence of death in this case was excessive or disproportionate, we note that this is the eighth case considered by this Court in which the death penalty was imposed. Our prior capital cases are: State v. Mason (Dec. 9, 1996), Marion App. No. 9-94-45, unreported; State v. Dougherty
(Sept. 12, 1996); Hancock App. No. 5-94-2, unreported; State v.Keith (Apr. 5, 1996), Crawford App. No. 3-94-14, unreported;State v. Joseph (Dec. 23, 1993), Allen App. No. 1-91-11, unreported; State v. Murphy (June 26, 1991), Marion App. No. 9-87-35, unreported; State v. Richey (Dec. 28, 1989), Putnam App. No. CA12-87-2, unreported; and State v. Spirko (Mar. 6, 1989), Van Wert App. No. 15-84-22, unreported. We have examined the prior capital cases and find that the imposition of a sentence of death in the present case is proportional to that imposed in our seven prior death penalty cases.
In Mason, supra, our most recently decided death penalty case, the defendant had raped and beaten to death a pregnant nineteen year-old girl. In Dougherty, supra, during the commission of an aggravated robbery, the defendant deliberately and callously shot an employee behind the ear at close range. In Keith, supra, the defendant was convicted of murdering three innocent victims with prior calculation and design. Two of our prior cases, Joseph and Spirko, supra, involved the intentional kidnapping and stabbing of innocent victims. Richey, supra,
involved a defendant who deliberately committed arson — killing a two-year old child whom Richey knew to be in the building. In our third death penalty affirmance, Murphy, supra,
the defendant murdered a victim by slicing her throat after she refused to comply with his extortion demands during an aggravated burglary and robbery.
After conducting a proportionality review and comparing appellant's case with the facts and circumstances of the seven death penalty cases which have been previously affirmed by this Court, we find that the penalty imposed by the trial court is neither excessive nor disproportionate. Appellant was found guilty of aggravated murder — the offense having been committed for hire and to prevent a witness from testifying at a criminal proceeding. We note, however, that none of our prior cases specifically involved murder for hire. Nevertheless, in the present case we believe that imposition of the death penalty, considering the brutality, the severity, the prior calculation and design, and the sparsity of any mitigating evidence, is proportional and appropriate to the penalties imposed in our prior death penalty cases.
In conclusion, we find that the sentence of death in the present case is appropriate.[5] Accordingly, we affirm the sentence of death imposed by the trial court.
Sentence of death affirmed.
BRYANT, P.J., and SHAW, J., concur.
[1] See also our discussion of the eighth assignment of error in the written opinion.
[2] It appears from the transcript that Calvin put the picture into his own pocket.
[3] See also our discussion of the eighth assignment of error in the written opinion.
[4] See also our discussion of the eighth assignment of error in the written opinion.
[5] See, also, State v. Frazier (1995), 73 Ohio St.3d 323 (death sentence imposed on defendant who killed victim during aggravated burglary to prevent victim from testifying against him in rape trial was neither excessive nor disproportionate to penalty imposed in similar circumstances); State v. Davis
(1991), 62 Ohio St.3d 326 (death sentence imposed on defendant convicted of aggravated murder for hire and killing of second victim for purpose of escaping detection, apprehension, trial or punishment was not excessive or disproportionate); State v.Williams (1988), 38 Ohio St.3d 346 (imposition of death penalty on defendant who hired another to commit murder was not disproportionate to sentences imposed in similar cases, such as cases involving execution-style killings).