OPINION
Defendant-appellant, Vincent Doan, appeals from the decision of the Clinton County Court of Common Pleas, denying his petition for postconviction relief and his motion for a new trial. We affirm the trial court's decision.
In June 1997, Doan was indicted by the Clinton County Grand Jury on two counts of aggravated murder, with death penalty specifications, and four counts of kidnapping. The charges stemmed from allegations that Doan murdered his girlfriend, Carrie Culberson, and disposed of her body with the help of his half-brother, Tracey Baker. Culberson's body has never been found.
More than 50 witnesses testified at Doan's trial, which lasted over three weeks. The state presented numerous witnesses who testified that Doan had a violent and controlling relationship with Culberson up to the night of the kidnapping and murder.
One of the state's key witnesses was Billie Joe Brown, who lived across the street from Doan. Brown testified that at approximately 12:30 a.m., on August 29, 1996, she saw Doan fighting with Culberson in her (Brown's) front yard. Brown testified that Doan punched Culberson in the face and said to her, "I told you the next time I'd kill you, you fucking bitch."
The state also presented the testimony of Lori Baker and her sister, Vicki Watkins. Lori is Tracey Baker's ex-wife, who was still living with him in August 1996. Lori and Vicki testified that Doan came to the Baker residence at 3:15 a.m., on August 29, 1996. Lori testified that Doan was wearing only a pair of jeans, and blood was smeared on his arms, chest and pants. Lori said that Doan's head was down, and he looked "distraught." Lori testified that Doan asked if his brother was home. Lori stated that after Doan and Tracey spoke, Doan took a shower and, afterwards, came out fully clothed and looking a "lot better." Lori testified that Doan and Tracey left together, taking garbage bags and a gun.
Lori testified that Doan and Tracey returned at 6:00 a.m. that same morning. According to Lori, Tracey wiped a substance that appeared to be blood off his boots. Upon his request, Lori gave Tracey a scrub brush and bleach, which he gave to Doan, who showered once more. After Doan left, Tracey told Lori, "You haven't seen me since 2:30 if anybody asks." Lori testified that Tracey also warned her that "the police would be coming but they won't be coming for what * * * you think they're coming for, but get rid of it anyway." Lori testified that the thing Tracey instructed her to "get rid of * * * anyway" was some marijuana plants the couple were growing at their home.
Another witness for the state was Mitchell Dean Epperson. Epperson was incarcerated with Doan at the Queensgate Correctional Facility in Hamilton County, in November 1996. Epperson testified that when he and Doan were discussing "girls cheating on us[,]" Doan told him, "when they do that you can't let them get away with it, you can't let them walk on you, you got to make them pay." Doan also told Epperson that "he would lay awake at night and think of a hundred different ways to kill her before he did it."
Doan presented a series of witnesses who indicated they had seen Culberson after the murder was alleged to have occurred. Doan also presented an alibi defense. Doan's father, Lawrence Baker, testified that Doan called him from Jeff Warren's home at about 1:00 a.m., on August 29, 1996. Lawrence and his wife, Betty Baker, testified that Doan was sleeping on their couch at approximately 1:30 a.m. to 2:00 a.m., on August 29, 1996.
The jury convicted Doan on one count of aggravated murder and three counts of kidnapping. Doan was sentenced to life imprisonment without the possibility of parole, to be served consecutively with a nine-year prison term for his conviction on the kidnapping charges. This court affirmed Doan's conviction and sentence on appeal. State v. Doan (Feb. 28, 2000), Clinton App. No. CA97-12-014.[1]
In September 1997, Doan moved for a new trial. In December 1997, Doan filed a second motion for a new trial, incorporating by reference the claims and arguments made in his previous motion for a new trial. In December 1998, Doan petitioned for postconviction relief. The following month he filed an amended petition for postconviction relief. In April 1999, he filed a second amended petition for postconviction relief. In August 2001, the trial court denied Doan's amended petition for postconviction relief and his motion for a new trial, without holding an evidentiary hearing as Doan had requested.
Doan appeals, raising the following assignments of error:
Assignment of Error No. 1:
 "THE TRIAL COURT ERRED IN DENYING DOAN'S POSTCONVICTION PETITION AND MOTION FOR NEW TRIAL CONTRARY TO THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
Doan argues the trial court erred by denying the claims for relief set forth in his amended petition for postconviction relief. Doan's first nine claims for relief are based on alleged Brady violations.
"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194. "The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley (1985), 473 U.S. 667, 682,105 S.Ct. 3375. Both exculpatory and impeachment evidence fall within the Brady
rule. Bagley, 473 U.S. at 676, 105 S.Ct. at 3380, citing Giglio v.United States (1972), 405 U.S. 150, 154, 92 S.Ct. 763.
Doan's first ground for relief alleges that the state suppressed evidence that would have aided him in impeaching Billie Joe Brown's testimony. This evidence includes: (1) the affidavit of former Blanchester Police Officer W. Daniel Nichols, Jr., in which Nichols averred that Brown could not "positively identify" Doan when presented with a photo array that included his picture; (2) Brown's September 1, 1996 statement to Nichols, wherein Brown stated the man she saw fighting with Culberson was of medium build, and was wearing a ball hat, a T-shirt and jeans, which, Doan asserts, conflicts with Brown's trial testimony that the man fighting with Culberson was wearing a muscle shirt and shorts; and (3) Nichols' affidavit testimony in which he stated that he met Brown "at some point" after she had given him her statement, and Brown told him that the prosecution told her not to talk to anyone about the case. Doan argues there is a reasonable probability that disclosure of this evidence would have led to a different outcome in his trial. We disagree with this argument.
First, Brown's trial testimony showed that she was capable of identifying Doan at the time she saw him punch Culberson in the face in Brown's front yard, at approximately 12:30 a.m., on August 29, 1996. Brown lived across the street from Doan, and she saw him every day during the summer of 1996. On one occasion, Brown even admonished Doan to slow down when he was backing his automobile out of his driveway because children were playing in the street. Brown saw Culberson drive up to Doan's house at least a couple of times a week during the summer, and she and Culberson would wave to one another. When Doan punched Culberson in the face, Brown could see both of them clearly because there was a full moon that night, and there is a street light in Brown's front yard. The only matter of significance that Brown did not know about Doan and Culberson to enable her to identify them was their names.
Second, Brown's September 1, 1996 statement to police was made part of the record. Upon defense counsel's request, the trial court reviewed the statement for inconsistencies, finding it to be "[s]ubstantially the same * * *" as her trial testimony. Consequently, this was an issue Doan could have raised on direct appeal; therefore, he is barred under the doctrine of res judicata from raising it now. State v. Cole (1982),2 Ohio St.3d 112, 115. Furthermore, any inconsistencies between Brown's September 1, 1996 statement concerning what Doan was wearing on the night of Culberson's disappearance and her trial testimony on that subject, were minor. And Doan fails to point out that Brown qualified her trial testimony regarding what Doan was wearing by stating, "Shorts and a muscle shirt, I think." (Emphasis added.) Given the evidence showing that Brown was able to recognize Doan by sight, any minor inconsistency between her trial testimony and her previous statement would have had little, if any, impact on the jury's decision.
Third, the issue of whether the prosecution told Brown or any of its other witnesses not to talk to Doan or his investigators was raised prior to Doan's trial. The trial court held a hearing on the matter, at which Brown and other witnesses testified. Brown testified that the prosecution told her that she could speak with Doan and his investigators if she wanted to, but did not have to speak with them if she did not. The trial court found that the prosecution told all witnesses it was their decision whether to talk to Doan's investigators. Doan is barred under the doctrine of res judicata from re-litigating an issue or argument he raised, or could have raised, on direct appeal. Cole,2 Ohio St.3d at 115. The trial court did not err in denying Doan's first ground for relief.
In his second ground for relief, Doan alleges the prosecution failed to disclose Lori Baker's "self-contradictory and inconsistent statements" made prior to her trial testimony on the subject of whether she saw any blood on Doan when he came to her door at 3:15 a.m., on August 29, 1996. Doan argues Lori's trial testimony that Doan was "covered in blood" was in contradiction with statements she had made earlier to the prosecutor in two interviews in November 1996. In those interviews, Lori told the prosecutor she did not see blood on Doan when he came to her house on the night of Culberson's disappearance. Doan also asserts the state was obligated to disclose Detective Brian Edwards' investigative report, which states Lori denied that Doan had been to her house on the night of Culberson's disappearance.
Assuming arguendo that the state was obligated to provide Doan with Edward's investigative report, we conclude that if that report, and the other evidence which Doan cites in support of this claim for relief, had been disclosed to the defense, there is no reasonable probability that the outcome of Doan's trial would have been different. The jury was made aware that Lori initially told the police and prosecutor that she did not see any blood on Doan when he came to her house in the early morning hours of August 29, 1996. At trial, Lori admitted lying to Edwards and the prosecutor on the subject. The jury could not have been surprised to learn that Lori was conflicted about telling law enforcement officials that Doan was "covered in blood" when he arrived at her house on the night of Culberson's disappearance. Doan was Lori's brother-in-law, and she and Doan had an affair. Because the jury was aware that Lori had initially lied about whether Doan was covered in blood, it could not have been surprised to learn that she had lied about it more than once. In light of the foregoing, the trial court did not err by denying Doan's second ground for relief.
Doan's third ground for relief alleges that the prosecution suppressed evidence of a "promise, deal or bargain" it reached with Lori Baker. Citing memoranda written by Detective Brian Edwards, Doan asserts that when law enforcement officials told Lori she would not be prosecuted if she did not lie to them, they were implicitly threatening to prosecute her if she did not give them information they could use to prosecute him.
Initially, the evidence does not support Doan's assertion of an implicit threat of prosecution. Furthermore, the issue of whether Lori or Vicki were promised anything in return for their testimony was raised at Doan's trial; both of them denied that they had been. Additionally, even if the evidence cited by Doan in support of this ground for relief was not disclosed to the defense, there is no reasonable probability that its disclosure would have led to a different outcome in Doan's trial. The jury was aware that Lori had initially lied to the prosecutor and police, and then changed her story. The jury chose to believe her anyway. There is no reasonable probability that the evidence cited by Doan would have changed their minds. The trial court did not err by denying Doan's third ground for relief.
In his fourth ground for relief, Doan alleges the state failed to disclose a witness statement from Mandy Bogan, one of Culberson's customers at the nail salon where she worked. Bogan stated she heard Culberson say she (Culberson) ought to "just leave everything behind and start over." Bogan also told police that Culberson had told her that she knew someone, possibly named "Frisch," who had rental properties out of town, which Culberson talked about renting. Doan alleged that this statement supports his theory that Culberson was not murdered, but simply decided to leave town.
We conclude there is no reasonable probability that if Bogan's statement had been disclosed to the defense, the result of Doan's trial would have been different. Among other things, the defense presented a number of witnesses who testified to having seen Culberson or her car after the time she was murdered, in support of their theory that Culberson had not been murdered, but, instead, had simply decided to leave town. Bogan's testimony would have been merely cumulative to that evidence. The trial court did not err in denying Doan's fourth ground for relief.
In his fifth ground for relief, Doan alleges the state failed to disclose the statements of Christa Lynn Pendleton and Karrie Donovan. Pendleton stated that while driving to work on Glady Road in Clermont County at 3:12 a.m., on August 29, 1996, she saw a man and a woman walking along the roadside and had to swerve to miss them. Doan alleges Pendleton's description of the woman "closely matches" Culberson's, while Pendleton's description of the man "generally fits" his own. Donovan stated she saw a man and woman at a junkyard between 1:00 a.m. and 3:00 a.m., on August 30, 1996. Doan contends Donovan's description of the woman matches Culberson's, while her description of the man could be anyone. Doan contends that if the state had disclosed this evidence, it would have made a different outcome reasonably probable. We disagree with this argument.
Initially, these statements were available to Doan at the time of his trial. Defense counsel issued a subpoena duces tecum to several Blanchester police officers, requiring them to make available to the defense "any and all sightings of * * * Culberson." The officers complied with these subpoenas. Therefore, Doan is barred from re-litigating this issue because he could have raised it at his trial. Cole,2 Ohio St.3d at 115.
Furthermore, there is no reasonable probability that the outcome of Doan's trial would have been different if this information had been disclosed to the defense because Pendleton's and Donovan's descriptions of the man and woman they saw were nonspecific and general in nature. The trial court did not err by denying Doan's fifth ground for relief.
In his sixth ground for relief, Doan asserts the state failed to disclose evidence of past disciplinary actions taken against Detective Edwards for lying to his supervisor and abusing sick time; Doan argues this evidence could have been used to impeach Edwards. However, any information concerning Edwards' employment history was available to defense counsel prior to Doan's trial.
Furthermore, there is no reasonable probability that disclosure of this information would have led to a different outcome in Doan's trial. Among other things, the incident in Edwards' career to which Doan refers occurred approximately ten years prior to the time of Doan's trial. The trial court did not err in denying Doan's sixth ground for relief.
In his seventh ground for relief, Doan argues the state failed to disclose that Vicki Watkins had been hypnotized prior to trial, to refresh or enhance her recollection. However, this court has already found that Vicki's statements under hypnosis were not significantly different from her pre-hypnosis statements. State v. Baker, Clinton App. No. CA2000-08-018, 2001-Ohio-8700. Therefore, there is no reasonable probability that disclosure of this evidence would have led to a different outcome in Doan's trial.
Doan further argues in this claim for relief that the prosecution failed to disclose that it administered voice stress tests to all of its witnesses. But the disclosure of this evidence would not have created a reasonable probability of a different outcome at his trial. The results of lie detector tests are not admissible unless both parties stipulate to their admissibility. See State v. Souel (1978), 53 Ohio St.2d 123. To the extent Doan would argue that the results of the voice stress tests could have led to the discovery of admissible evidence that would have assisted his defense, the Ohio Supreme Court has rejected that argument as being too speculative. See State v. Davis (1991), 62 Ohio St.3d 326,341-342. The trial court did not err in denying Doan's seventh ground for relief.
In his eighth ground for relief, Doan alleges the state failed to disclose evidence that could have been used to impeach Mitchell Epperson. In support of this allegation, Doan presented the affidavit testimony of Epperson, himself, who stated that an investigator from the prosecutor's office "promised" him that he would be paid $10,000 from a reward fund established on Culberson's behalf if he testified against Doan and Doan was convicted. Doan also alleges that the prosecutor failed to disclose that Epperson was released two months early from his sentence for violating probation, due to his cooperation in the prosecution of Doan.
On Doan's direct appeal, this court found that Doan's "near-confession" to Epperson was "devastating proof" of Doan's guilt. Doan, Clinton App. No. CA97-12-014, at 22. However, we also found that testimony from several other witnesses constituted devastating proof of Doan's guilt, including the testimony of Lori Baker, Vicki Watkins, and Billie Joe Brown, as did Doan's "near confession" on the deck of the Baker home, shortly after Culberson was found missing, in which Doan pulled his shirt over his head and stated, "I can't imagine * * * hurting someone and holding her till she died." Id. Thus, even if the evidence Doan cites had been disclosed to the defense, there is no reasonable probability that the outcome of Doan's trial would have been different. The trial court did not err by denying Doan's eighth ground for relief.
In his ninth ground for relief, Doan alleges the evidence the state failed to disclose as outlined in his first eight grounds for relief, when considered collectively, creates a reasonable probability that the outcome of his trial would have been different had that evidence been disclosed. We disagree with this argument. Even when the evidence the state allegedly failed to disclose is considered collectively, it does not undermine our confidence in the outcome of Doan's trial. The trial court did not err by denying Doan's ninth ground for relief.
In his tenth ground for relief, Doan argues that he was denied the effective assistance of counsel as a result of the state's failure to disclose to his defense counsel the evidence set forth in his previous grounds for relief. Doan argues that to the extent this court finds that any of this evidence was available to defense counsel, then counsel's failure to obtain this evidence was "unreasonably deficient and prejudicial."
To prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient and that he was prejudiced thereby. Strickland v. Washington (1984), 466 U.S. 686, 687,102 S.Ct. 2052. A failure to make either showing will doom the defendant's claim. Id. To show that his counsel's performance was deficient, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To show that he was prejudiced by that deficient performance, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.
Doan was not prejudiced by the state's failure to disclose the evidence discussed in his first eight grounds for relief or by his counsel's failure to obtain that evidence, because there is no reasonable probability that disclosure of the evidence would have led to a different outcome in Doan's trial. The trial court did not err by denying Doan's tenth ground for relief.
In his eleventh and twelfth grounds for relief, Doan alleges, as he did in his direct appeal, the trial court erroneously admitted hearsay and other acts evidence. The only new evidence Doan submitted on this issue was a videotape of a television program about his case, which contains interviews with members of the jury that convicted him. Doan asserts the interviews of the jurors contained in the videotape "clearly demonstrates how prejudicial and influential the prosecution's improper prior acts evidence was in the jury's decision to convict [him] of Culberson's murder."
The videotape does nothing to demonstrate that our decision overruling the assignments of error in his direct appeal pertaining to hearsay and "other acts" testimony was incorrect. Therefore, Doan is barred from re-litigating the issues of the trial court's admission of hearsay and other acts evidence pursuant to the doctrine of res judicata. Cole,2 Ohio St.3d at 115. The trial court did not err by denying Doan's eleventh and twelfth grounds for relief.
In his thirteenth ground for relief, Doan alleged there was insufficient evidence presented to support his conviction on the aggravated murder and kidnapping charges in light of "newly discovered" evidence set forth in his petition for postconviction relief. This evidence consisted of Carolyn Evans' affidavit testimony, stating that she was told by one of Culberson's friends, Tonya Whitten, that Culberson was angry at Doan, and that she was looking for a man in a black truck on the night of her disappearance; Tony Frazier's affidavit testimony that Doan did not hit Culberson in the head with a space heater, as she had claimed; and Mitchell Epperson's early release from jail and his being offered reward money if he testified against Doan.
However, none of this evidence would render Doan's conviction invalid on the grounds that it was not supported by sufficient evidence. In determining whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
When the evidence presented against Doan is viewed in a light most favorable to the prosecution, it is plain there was sufficient evidence presented to support Doan's conviction for the aggravated murder and kidnapping of Culberson, even when the "new evidence" Doan cites is considered. The trial court did not err in denying Doan's thirteenth ground for relief.
Doan also argues that the trial court erred by denying his motion for a new trial based on alleged juror misconduct. In support of his motion for a new trial, Doan presented the affidavit testimony of Woody Schlict, who stated that he overheard one juror tell another juror, "`guilty' would be for the `best'." Schlict also stated that he "saw the Jurors talking to Deputies in halls by the pool and at the front desk." Doan argues that Schlict's affidavit shows "the jury was conducting its deliberations outside the jury room and may have been influenced by outside parties." We find this argument unpersuasive.
The trial court's determination as to whether to grant a new trial will only be reversed if the trial court abused its discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion implies that the trial court's decision is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157. The "long-standing" rule in this state is that a judgment will not be reversed based upon juror misconduct unless prejudice to the complaining party is shown; prejudice will not be presumed. State v. Keith, 79 Ohio St.3d 514, 526, 1997-Ohio-367.
Here, Doan has not shown how he was prejudiced by the alleged juror misconduct, nor can we discern any from Schlict's affidavit. Schlict's affidavit does not state how he knew the persons he overheard talking were actually jurors in the Doan case, nor does it state how he knew they were actually discussing Doan's case and not some other trial. Additionally, the fact that the jurors and deputies were talking to each other does not show there was juror misconduct. Deputies and jurors talk to each other during trials by necessity. And there was no evidence presented showing the jurors and deputies discussed the Doan case. In light of these circumstances, the trial court did not abuse its discretion by overruling Doan's motion for a new trial.
Doan's first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED BY INVOKING RES JUDICATA AND/OR BY FINDING THAT THE POLICE REPORTS AND WITNESS STATEMENTS SUPPORTING DOAN'S POST-CONVICTION PETITION WERE AVAILABLE TO TRIAL COUNSEL."
Doan argues the trial court erred by finding that his first, second, third, fifth, sixth, eighth and ninth grounds for relief were res judicata, because he supported these claims by evidence dehors the record, which was not available to defense counsel.
Assuming arguendo that res judicata did not apply to bar these claims for relief, the trial court did not err by denying those claims. This court, in response to Doan's first assignment of error, has already found that there is no reasonable probability of a different outcome to Doan's trial even if the evidence that Doan claims was not disclosed to him had, in fact, been disclosed. Therefore, even if the trial court erred in applying the doctrine of res judicata, it still properly denied Doan's claims for relief.
Doan also alleges the trial court erred by finding that his eleventh and twelfth grounds for relief were barred under the doctrine of res judicata, arguing that he presented evidence dehors the record in support of those claims, namely, the aforementioned videotape of a television program about Doan's trial, which contained interviews with some of the jurors. However, as we have previously stated, the videotape does nothing to show that our prior rulings on the hearsay and other acts issues raised in Doan's direct appeal were incorrect.
Doan's second assignment of error is overruled.
Assignment of Error No. 3:
 "THE TRIAL COURT ERRED BY DENYING THE DISCOVERY REQUESTED BY PETITIONER VINCENT DOAN."
Doan argues the trial court erred by not granting him the opportunity to conduct discovery to support his claims for relief. However, there is no right to discovery in postconviction relief proceedings. State v.Phillips (Feb. 3, 1999), Summit App. No. 18940. Therefore, the trial court did not err in denying Doan's request to engage in discovery.
Doan's third assignment of error is overruled.
Assignment of Error No. 4:
 "THE TRIAL COURT ERRED BY DENYING AN EVIDENTIARY HEARING ON DOAN'S CLAIMS."
Doan argues the trial court erred by failing to hold an evidentiary hearing on his claims for relief based on alleged Brady violations, which were set forth in his petition for postconviction relief. We disagree with this argument.
A criminal defendant who seeks to challenge his conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing. State v. Calhoun, 86 Ohio St.3d 279, 282,1999-Ohio-102. "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." Id., at paragraph two of the syllabus.
This court has found that the trial court did not err in dismissing Doan's claims for relief based on alleged Brady violations, determining that even if the prosecution failed to disclose to the defense the evidence cited by Doan, there is no reasonable probability that disclosure of the evidence would have led to a different outcome in Doan's trial. Therefore, Doan's petition for postconviction relief, the supporting affidavits, the documentary evidence, the files, and the records of the case show that Doan is not entitled to relief, and the trial court properly denied Doan's petition without holding an evidentiary hearing.
Accordingly, Doan's fourth assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.
[1] Tracey Baker was convicted of obstructing justice and tampering with evidence for helping Doan dispose of Culberson's body. Tracey's conviction and sentence were affirmed by this court in State v. Baker
(2000), 137 Ohio App.3d 628. Tracey filed a motion for a new trial and a petition for postconviction relief, which the trial court denied. The trial court's decision was affirmed by this court in State v. Baker, Clinton App. No. CA2000-08-018, 2001-Ohio-8700.