OPINION
{¶ 1} Defendant-appellant, Elriheim Holloway, appeals from the August 8, 2002 judgment of conviction of the Franklin County Municipal Court finding him guilty of assault in violation of R.C. 2903.13 and sentencing him to 180 days in jail. For the reasons that follow, we affirm.
 {¶ 2} On May 6, 2002, appellant was charged with three misdemeanor counts of assault, domestic violence, and aggravated menacing. The charges stemmed from an incident that occurred at approximately 8:00 p.m. at 5606 Raintree Place, in Franklin County, Ohio. The case was tried to a jury beginning on July 31, 2002. The victim did not testify, but the trial proceeded with the testimony of Columbus Police Officers Ky Reed and Tennis Jude alone. Prior to trial, defense counsel moved to exclude all of the alleged victim's statements as hearsay. The trial court overruled the motion, but agreed to entertain objections as to each statement during trial. The following facts are from the officers' testimony.
 {¶ 3} Police officers Ky Reed and Tennis Jude were dispatched to 5606 Raintree Place in response to a 911 telephone call coming from that address. They arrived at the townhouse within four minutes. During that time, the officers received radio communications that numerous 911 calls had come from that address, and by means of their mobile data computer they read that a female could be heard in the background saying "Get your hand off me," or "Take your hand off me." (Tr. 121.)
 {¶ 4} As the officers approached the residence, they could hear loud voices behind the door, but could not make out what was said. The officers knocked, and a woman immediately opened the door less than a foot. The woman looked as if she had been crying. The woman said to someone behind her, "Get rid of the knife, mother fucker, the cops are here," or "the police are here." (Tr. 123.) The officers opened the door, entered the home, and saw appellant standing about half way up the stairs to the second floor.
 {¶ 5} With guns drawn, the officers ordered appellant to show his hands, which he did. The officers then ordered him downstairs and outside. Appellant shook his head no, and did not comply. After repeated commands, the officers forced appellant down and handcuffed him.
 {¶ 6} Officer Reed escorted appellant to a police van where appellant repeatedly stated to the officer, "I didn't do anything. Why are you doing this to me?" (Tr. 127.) Appellant also stated that he did not know how the incident began. Appellant stated that he had been smoking crack and drinking all day.
 {¶ 7} While Officer Reed was dealing with appellant, Officer Jude spoke to the alleged victim. Officer Jude described the victim as crying, very emotional, afraid, nervous, and very upset with what had taken place. (Tr. 143.) Officer Reed testified that she was crying, and appeared to be "shook up" and distraught. (Tr. 132.) The victim told Officer Jude that she and appellant had been arguing. During the argument, appellant had wanted to leave the apartment to buy drugs. Not wanting him to do this, the victim attempted to stand in his way at the front door.
 {¶ 8} According to the statement the victim gave to Officer Jude, appellant then grabbed her by the head and pushed her against the wall and onto the floor. Appellant allegedly said, "If you do not get out of my way, I will kill you." (Tr. 143.) Appellant at one point went to the kitchen to retrieve a kitchen knife, and he tried to throw a table through the window onto the patio.
 {¶ 9} Neither officer observed a knife in the area or discovered a weapon on appellant. The officers did not personally witness any struggle or assault. Officer Jude observed what he believed to be fresh scratches or marks on the victim. He took Polaroid pictures of the alleged wounds. The photographs were admitted into evidence. However, the marks on the victim depicted in the photos are indistinct.
 {¶ 10} At the close of the city's case, the trial court dismissed the domestic violence and aggravated menacing charges. After deliberating for a period of time, the jury requested to see the police report. The trial court denied the request explaining that it had never been admitted into evidence. The jury resumed deliberations and then indicated it was deadlocked. The jury requested that the trial court restate the legal instructions regarding the offense of assault, and the trial court did so. The jury then resumed deliberations and found appellant guilty on the charge of assault. The trial court sentenced him to 180 days in jail.
 {¶ 11} Appellant filed a timely notice of appeal, assigning as error the following:
 {¶ 12} "The trial court erred in admitting an out-of-court statement from an alleged victim as an excited utterance under Evid. R. 803(2)."
 {¶ 13} In his assignment of error, appellant challenges the admission of three out-of-court statements of the victim. Prior to trial, counsel for appellant brought a motion in limine to preclude the admission of all statements of the alleged victim as inadmissible hearsay. The trial court overruled the motion in limine indicating it would rule on the admissibility of statements one by one. (Tr. 117.) We shall examine each of the statements in turn.
 {¶ 14} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 15} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. Evid.R. 801(A). An assertion, for hearsay purposes, is a statement about an event that happened or a condition that existed. State v. LaMar, 95 Ohio St.3d 181, 197, 2002-Ohio-2128. Therefore, a true question or inquiry is not hearsay because it cannot be proven either true nor false since it is not a statement of fact. State v. Carter (1995), 72 Ohio St.3d 545, paragraph two of the syllabus, certiorari denied (1995), 516 U.S. 1014, 116 S.Ct. 575, and LaMar, supra. Furthermore, statements which are not intended to prove the truth of what was said are not hearsay. State v. Davis (1991), 62 Ohio St.3d 326, 343, certiorari denied (1992), 506 U.S. 803, 113 S.Ct. 302. A statement is not hearsay when it is offered into evidence for a purpose other than "to prove the truth of the assertion by the declarant not on the witness stand at the time of the declaration." Staff Note to Evid.R. 801(C); State v. Santiago, Franklin App. No. 02AP-1094, 2003-Ohio-2877.
 {¶ 16} Evid.R. 803, which establishes those categories of hearsay that are exempted from the exclusionary rule, states:
 {¶ 17} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 18} "(1) Present sense impression
 {¶ 19} "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
 {¶ 20} "(2) Excited utterance
 {¶ 21} "A statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition."
 {¶ 22} In State v. Taylor (1993), 66 Ohio St.3d 295, 300-301, the Ohio Supreme Court outlined the parameters for admission of evidence as an excited utterance:
 {¶ 23} "Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.)
 {¶ 24} The determination of whether a hearsay declaration should be admitted as an excited utterance is a matter within the trial court's sound discretion. Roach v. Roach (1992), 79 Ohio App.3d 194, 205.
 {¶ 25} The first statement appellant sought to exclude was the information conveyed to the officers by means of the mobile data computer that a female could be heard in the background yelling or saying "Get your hand off me," or "Take your hand off me." Defense counsel objected to the statement, but the trial court overruled the objection. (Tr. 121-122.)
 {¶ 26} There are several problems with the admission of this statement. First, the caller was never identified, and we do not know to whom the statement was directed. Thus, there is a lack of foundation for the statement, and it could have been excluded on relevance grounds.
 {¶ 27} Second, there are potentially multiple levels of hearsay because the officers were recounting what the dispatcher had transcribed from the 911 call. (Tr. 121.) In part because the information was relayed in a written form, it is difficult to tell if the statement was an excited utterance or even if it was recorded and recounted accurately. One officer testified the caller was "yelling" in the background (Tr. 138), and the other officer testified that the "female could be heard in the background, stating, * * * `Get your hand off me,' or `Take your hand off me.'" (Emphasis added.) (Tr. 121.) Thus, although the initial statement could possibly qualify as a present sense exception, there is no hearsay exception to the multiple levels of hearsay. Cf. State v. McNeal (June 18, 2002), Allen App. No. 1-01-158, (tape recording of 911 call from unidentified caller admissible under present sense exception to hearsay rule).
 {¶ 28} Third, the city has argued that the statement is not hearsay in that it was not admitted for the truth of the matter asserted, but rather for the purpose of showing why the officers reacted as they did. See State v. Evans, Franklin App. No. 01AP-1112, 2002-Ohio-3322 (testimony of officer that bystander said someone was threatening people with a shotgun was not hearsay but offered to explain why officers responded to the scene). Here, however, the officers appeared to be en route to the domestic call before or at the time the information came over the mobile data computer, and there is no indication that the statement affected their response in any way. Thus, the statement cannot be admitted on that ground.
 {¶ 29} The city further argues that the statement is not hearsay because it is not an assertion. Just as questions are normally not hearsay because they cannot be proven true or false, the city argues that the statement from an unidentified 911 caller to "get your hand off me" or "take your hand off me" is not capable of being proven true or false either.
 {¶ 30} In Santiago, this court examined the statement "you might as well kill me," and determined that it contained no assertion by the speaker that the prosecution desired to have proved as true. Id. at ¶ 22.
 {¶ 31} Here, however, the only conceivable purpose for admitting the statement "get your hand off me" is for the prosecution to bolster or corroborate the victim's later statement to Officer Jude that appellant grabbed and pushed the victim. We conclude, therefore, that the statement was hearsay as the prosecution sought to have the statement admitted for the assertion that appellant had his hands on the victim. While we are cognizant of the cases that hold 911 tapes are admissible in certain circumstances as excited utterances or present sense impressions, this was not a 911 tape that was played for the jury. The lack of foundation and multiple levels of hearsay rendered the statement inadmissible. Thus, it was error for the trial court to admit the 911 statement.
 {¶ 32} The victim's next statement to "Get rid of the knife, mother fucker, the cops are here," or "the police are here," presents a closer question. While appellant argues this statement was also hearsay because the prosecution sought to admit it for the purpose of corroborating the victim's statement to Officer Jude that appellant retrieved a knife from the kitchen, the prosecution argues that it was offered for the purpose of showing why the officers immediately entered the residence and took appellant into custody. As discussed above, in Evans, the testimony of the officer that a bystander said someone was threatening people with a shotgun was not hearsay but offered to explain why officers responded to the scene. We believe a similar result applies here.
 {¶ 33} Even if the "get rid of the knife" statement was an assertion offered to prove appellant had a knife at some point in the altercation, it arguably falls within the present sense exception to the hearsay rule. The fact that the officers subsequently did not find a knife goes to weight, not admissibility. Thus, the trial court did not err when it admitted the statement the victim made at the door.
 {¶ 34} Finally, we turn to the statement the victim gave to Officer Jude after appellant was taken into custody. The following exchange took place:
 {¶ 35} "Q. Talking about the victim herself, what was she like when you spoke to her?
 {¶ 36} "A. She was crying. She was very emotional, very upset with what had taken place, afraid.
 {¶ 37} "Q. Okay. Would you characterize her — You characterized her as being upset. How could you tell she was upset?
 {¶ 38} "A. Her emotions.
 {¶ 39} "Q. How could you tell she was afraid?
 {¶ 40} "A. Nervous.
 {¶ 41} "Q. Okay. What did she tell you had happened?
 {¶ 42} "A. She explained to me that an argument had ensued between her and the defendant. During the argument the defendant wanted to leave the residence. She explained that he was going to go buy drugs, crack. Not wanting him to leave to do this, she attempted to stand in his way at the front door. He at that time grabbed her by the head and arm, pushed her against the wall and then also onto the floor.
 {¶ 43} "Q. Did she say if he made any comments to her?
 {¶ 44} "A. Yes. He did say that "If you do not get out of my way, I will kill you." He also at one point went to retrieve a kitchen knife, which was in the kitchen, which is right next to the living room. Also during the argument and struggle, there was a table that he had tried to throw through the window onto the patio, rear patio.
 {¶ 45} "Q. You mentioned a knife in the kitchen. Did you go into the kitchen to find this knife?
 {¶ 46} "A. I don't recall.
 {¶ 47} "Q. Did her demeanor change at all as she related this story?
 {¶ 48} "A. Yeah. After a while, after we talked, she was able to calm down. I explained to her that everything was going to be okay." (Tr. 142-144.)
 {¶ 49} Initially, we note that the defense counsel did not object immediately when the prosecutor asked, "What did she tell you had happened?" However, defense counsel did object later, referencing that the officer had testified there was a calming down. The trial court overruled the objection and admonished defense counsel not to argue with her. We believe this exchange coupled with the motion in limine was sufficient to preserve the objection on hearsay grounds.
 {¶ 50} Appellant argues that the officer's testimony failed to establish that the victim was suffering from nervous excitement sufficient to cause her to lose domination over her reflective faculties. Appellant characterizes the victim as having calmed enough to be under control when the officers arrived, calm enough to answer questions, and calm enough to give a detailed statement that appears to be more the product of reflective thought than an excited utterance. We disagree.
 {¶ 51} When the officers arrived, appellant and the victim were still in the midst of the altercation. The victim's statement came within a very short period of time after appellant was taken out of the home. The trial court reasonably could have found, under the circumstances, that the altercation in the home was a startling occurrence that produced nervous excitement sufficient to render the victim's statements spontaneous and unreflective. See, e.g., Taylor, at 303 ("[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought"). Under these circumstances, the trial court did not abuse its discretion in admitting the statement under the excited utterance exception.
 {¶ 52} Given this conclusion, we further conclude that the admission of the 911 statement was merely corroborative of the victim's subsequent statement to Officer Jude, and therefore not prejudicial to the ultimate outcome of the case. We are cognizant that this was a close case with the jury indicating at one point that it was deadlocked. However, "absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66, citing State v. Withers (1975),44 Ohio St.2d 53, 55; State v. Hymore (1967), 9 Ohio St.2d 122, 128.
 {¶ 53} Based on the foregoing, we overrule appellant's assignment of error. The judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.