[Cite as *State v. Howard*, 2018-Ohio-648.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| TORIANO HOWARD | : | Case No. 2017CA00040 & |
| | : | 2017CA00046 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Court of Common Pleas, Case Nos. 2016CR1756 & 2016CR1803

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    February 20, 2018

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

For Defendant-Appellant

BERNARD L. HUNT
2395 McGinty Road N. W.
North Canton, OH 44720

*Wise, Earle, J.*

{¶ 1}   Defendant-appellant Toriano Howard appeals the judgement of conviction and sentence entered by the Stark County Court of Common Pleas on February 7, 2017. Plaintiff-appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In August 2016, Detective Steve Minich of the Alliance Police Department arrested Aaron Hall for trafficking in heroin, a felony of the fifth degree. Hall had sold heroin to two people who subsequently overdosed. Those individuals told Minich Hall had sold them the heroin, and Hall told Minich appellant was his supplier. Minich asked Hall if he would be willing to perform three controlled buys from appellant in exchange for dropping the trafficking charge and Hall agreed. At the time, appellant, who Hall knew only as "Trap," lived in Canton.

{¶ 3}   Minich went forward with the plan assisted by Alliance officers Hiles and Rajcan. The first buy took place on September 6, 2016. First, Hall and his vehicle were searched to make certain he did not possess any contraband. He was then equipped with an audio and video digital transmitter and recorder so that officers could hear Hall, see things from his point of view during the transaction, and also video record the transaction. Hall was then directed to contact appellant at the phone number he normally used to contact him. Hall sent a text to appellant and asked "Hey bro, can I grab a half," which means may I purchase $75 worth of heroin. Appellant texted back "yea."

{¶ 4}   Hall was provided with $75 in previously photocopied currency. Officers then began following Hall to appellant's residence on 9th Street N.E in Canton. Partway there, however, appellant called Hall and told him to go to 1620 22nd St. N.E. in Canton

instead. This was the residence of appellant's girlfriend's family. Hall proceeded to that address. Appellant came out of the house and Hall made the buy. There were children playing 20-30 feet away from the men during the transaction. Minich was able to see the transaction and the children. Hall then drove back to the Alliance Police Department with officers following. Once there, officers took possession of the heroin and searched Hall and his vehicle again. The heroin field tested positive for heroin and was sent to the Canton-Stark County Crime Lab where this testing was later confirmed.

{¶ 5} The following day, a second controlled buy was made, this time in concert with the Canton Police Department. Officers from both departments met Hall at the Walmart on Harmon and Route 62. The same protocol was followed equipping Hall with audio and video recording devices, cash, and searching Hall as well as his vehicle. Hall texted appellant and asked if he could "grab a 50," which is about half a gram of heroin. Howard responded "yea I'm on 9th."

{¶ 6} Hall started towards 9th Street with officers following, but once again, halfway there appellant contacted Hall and told him to go to the 22nd Street address. Hall did so and completed the transaction. When appellant came outside with the heroin to meet Hall, there were two children playing in the front yard 15 to 20 feet away.

{¶ 7} Following the transaction, Hall and the officers went to the Alliance Police Department where officers took possession of the heroin and searched Hall and his vehicle. The heroin again field tested positive, a finding later confirmed by the crime lab.

{¶ 8} The final buy took place on September 12, 2016. The same procedures were followed. This time, however, the purchase was made at appellant's residence at

1009 9th Street, and Hall went inside the residence to make the buy. Appellant's 8 year-old son stood next to appellant as cash and drugs changed hands.

{¶ 9} Based on these transactions, Canton Police Detective Mike McKay obtained search warrants for both the 9th Street N.E and 22nd Street N.E addresses. Canton officers executed the warrants and Alliance officers provided security. No drugs or evidence of drug trafficking were found at the 22nd Street address.

{¶ 10} At the 9th Street address, officers were met by appellant's mother and step-father. They were cooperative and stated appellant was staying in the basement. Meanwhile, additional officers had appellant under surveillance. He was stopped while driving toward the 22nd street address with his girlfriend and children. Appellant was arrested, brought to the 9th Street address and seated in the living room with his mother and stepfather. When appellant arrived, Canton officers had already begun the search of the 9th Street home.

{¶ 11} While that was going on, Officer McKay of the Canton Police Department was in the basement searching appellant's bedroom, McKay heard appellant come into the residence yelling profanities and failing to follow police orders. Appellant asked to speak to McKay. Once appellant calmed down, McKay and Officer Penvose took him into another room, turned on an audio recorder and read appellant his *Miranda* warnings. Appellant then told McKay he wanted to help officers with illegal drug activity in the area and asked McKay to contact a third agency. McKay had assumed appellant wanted to talk about the search and the items found by officers. He considered the conversation unproductive and did not feel appellant was being sincere. He therefore terminated the conversation and turned off the recorder. As soon as he did, appellant said "McKay, you

know I sell that shit and I fuck with the hos. You know, you know." Once returned to the living room, appellant also stated "last time you guys got me with a gram; this time you got me by the balls cuz of 31 grams."

{¶ 12} The search of the 9th Street home yielded evidence of drug trafficking, drug possession.

{¶ 13} In the basement, three bags of heroin totaling 33.77 grams was found in one of appellant's shoes, and .05 grams of morphine was located on top of a speaker. Mail addressed to appellant was found on top of a nightstand. Two cell phones and a digital scale with cocaine residue on it were also found. There were children's toys, bedding, and clothing scattered throughout the basement.

{¶ 14} Upstairs in the kitchen, officers found ammunition and plastic tear-off bags used for packaging drugs. Later testing identified traces of heroin on one of the tear-off bags. Suboxone strips, used by people with heroin addiction, were found in the pocket of a jacket in the living room. Officers also seized the cell phone appellant had on his person, the same one on which appellant received texts from Hall.

{¶ 15} Numerous text messages were taken from the phone indicative of drug trafficking. Additionally, one message from "O'Burn" asked where appellant lived. Appellant responded "my mom's on 9th st. 9th st. n. Gibbs down the street from Church's Chicken."

{¶ 16} As a result of these events, in case 2016CR1756, based on the search of his residence, appellant was charged with one count of trafficking in heroin in the vicinity of a juvenile, a felony of the first degree, one count of possession of heroin, a felony of the second degree, and for the morphine, one count of aggravated possession of drugs,

a felony of the fourth degree. In case number 2016CR1803, based on the controlled buys, appellant was charged with three counts of trafficking in heroin in the vicinity of a juvenile, felonies of the fourth degree. On September 23, 2016, appellant pled not guilty at arraignment and was released on $100,000 bond pending trial. On October 25, 2016, appellant failed to appear for a pretrial and a capias was issued for his arrest. The capias was served on November 18, 2016. Circumstances arising out of the fact that appellant absconded led to additional charges and a third case -- case number 2016CR2191.

{¶ 17} In January, 2017, the state moved for joinder of all three cases and appellant filed a motion to sever. Appellant's motion argued each case should be tried separately, or in the alternative, the first two cases, 2016CR1756 and 2016CR1803, should be tried together and 2016CR2191 tried separately.

{¶ 18} After a hearing on the matter, the trial court found no prejudice in trying all three cases together, however for procedural reasons, ruled 2016CR1756 and 2016CR1803 would be tried together and 2016CR2191 at a later date.

{¶ 19} Cases 2016CR1756 and 2016CR1803 proceeded to a jury trial on January 24, 2017. At the conclusion of the trial, appellant was found guilty of one count of trafficking in heroin in the vicinity of a juvenile, a felony of the first degree, one count of possession of heroin, a felony of the second degree, and three counts of aggravated trafficking in the vicinity of a juvenile, felonies of the fourth degree. Appellant was acquitted of aggravated possession of drugs.

{¶ 20} The trial court sentenced appellant on January 30, 2017. The court first merged the first degree felony trafficking in heroin and the second degree felony possession of heroin and imposed maximum consecutive sentences as follows: trafficking

in heroin, a felony of the first degree, 11 years; three counts of trafficking in heroin, felonies of the fourth degree, 18 months on each count. The trial court ordered Howard to serve each sentence consecutively for an aggregate total of 15.5 years incarceration.

{¶ 21} Appellant subsequently filed an appeal, and the matter is now before this court for consideration. He raises 6 assignments of error:

I

{¶ 22} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SEPARATE TRIALS."

II

{¶ 23} "THE APPELLANT WAS DENIED HIS RIGHT TO FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

III

{¶ 24} "THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

IV

{¶ 25} "THE TRIAL COURT ERRED IN ADMITTING APPELLANT'S STATEMENTS WHICH WERE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE."

V

{¶ 26} "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING MAXIMUM AND CONSECUTIVE SENTENCES."

VI

{¶ 27} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶ 28} In his first assignment of error, appellant argues he was prejudiced by the joinder of case numbers 2016CR1756 and case number 2016CR1803. We disagree.

{¶ 29} Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information."

{¶ 30} Crim.R. 8(A) governs joinder of offenses and states the following:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 31} Crim.R. 14 governs relief from prejudicial joinder and states the following:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶ 32} The standard of review on this issue is set forth in *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288, (1981) syllabus:

A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.

{¶ 33} In *State v. Franklin*, 62 Ohio St.3d 188, 122 (1991), the Supreme Court of Ohio explained the following:

> The prosecutor may counter the claim of prejudice in two ways. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298. The first is the "other acts" test, where the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). *Id.*; see, also, *Bradley v. United States* (C.A.D.C.1969), 433 F.2d 1113, 1118-1119. The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. *State v. Lott*, supra; *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251; *State v. Torres*, 66 Ohio St.2d at 343-344, 20 O.O.3d at 315, 421 N.E.2d at 1291. If the state can meet the joinder test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *State v. Lott*, supra; *State v. Roberts*, supra; *State v. Torres*, supra.

{¶ 34} First, as noted by the state, appellant did not properly preserve this issue for review. Although appellant filed a pretrial motion to sever, he failed to renew his motion at any point during trial, thereby waiving any previous objection

to joinder of these offenses. "If the defendant files a motion to sever, but ultimately fails to renew the objection at the close of either the state's case or presentation of all evidence, he waives the joinder issue on appeal." *State v. Cobb*, 12th Dist. App. No. CA2007-06-153, 2008-Ohio-5210, fn 6 citing *State v. Sapp*, 105 Ohio St.3d 104, 822 N.E.2d 1239, 2004-Ohio-7008.

{¶ 35} Even if the matter were not waived, however, we nonetheless find appellant has failed to demonstrate he was prejudiced by joinder of the two separately indicted cases. Case number 2016CR1803 involved the three trafficking charges that resulted from the controlled buys conducted by Alliance Police Department. Case number 2016CR1756 involved charges stemming from the search warrant executed by the Canton Police Department at appellant's residence as a result of the controlled buys. These cases were part of the same course of criminal conduct. Further, the evidence of each matter was simple and direct and the jury's verdict reflects that fact. The jury was able to discern the separate crimes and was not biased by the presentation of evidence on multiple counts as demonstrated by the fact that it acquitted appellant of aggravated possession of drugs.

{¶ 36} Appellant has therefore not meet his burden to establish prejudice. Accordingly, the first assignment of error is overruled.

II

{¶ 37} In his second assignment of error, appellant argues he was denied a fair trial due to prosecutorial misconduct. Specifically, appellant argues the prosecutor improperly asked Detective McKay to testify as to appellant's veracity, violated the trial

court's motion in limine by allowing the jury to hear that mail found in appellant's bedroom was from the probation department, improperly introduced ammunition and a crack pipe discovered during the search, and by misstating in closing argument which officers were present to hear appellant's statement "last time you guys got me with a gram, this time you got me by the balls cuz of 31 grams."

{¶ 38} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

Testimony of Detective McKay

{¶ 39} Relevant to appellant's argument, the prosecutor's questioning of Detective McKay at T. 378-382, was as follows:

> McKay: Once he [appellant] sat down, he wanted to speak with me. So I told him if he calmed down, I would speak with him; but if he didn't, I wasn't gonna speak with him. I didn't want him to continue to act up.
>
> He calmed down, so I take one of the other officers that are there and we go into one – one of the other rooms upstairs which we call a clean room, which it had already been checked. He had calmed down; ah, I had cuffed him in the front. And, ah, I had an audio

recorder and I read him his Miranda warnings; he signed his Miranda warnings and I interviewed him.

* * *

The State: What happens next?

McKay: After I read it to him, he signed it. Ah, I started speaking to him about the case.

* * *

And then he want to, ah, basically he was, he said he wanted to try to help us with, ah, illegal drug activity in the area. He wanted to help.

The State: During the course of your interview, ah, with him, you – was anyone else in the room with you?

McKay: Officer Penvose was also in the room.

[The State]: And based on your knowledge and your experience and the evidence you were seeing that day, ah, did you find the statements he was making to you initially while the tape was running to be credible?

[Counsel for Howard]: Objection.

The Court: Yeah, I would rephrase it.

[The State]: How did you feel about those statements he was making as the tape was running?

[Counsel for Howard]: Objection.

The Court: I think that's okay. Why don't we just make it easier. Why don't you just have him say what the statements were and we can all decide what we think of it. What were the statements that were made.

[The State]: He's making statements to you?

McKay: Yes.

[The State]: what was your reaction to the statements?

McKay: * * * [m]y reaction to the statements, I was a little confused on – once he said he wanted to speak with me, I was under the impression that he was going to speak with me about the items that we located in the house. It appears I was misled and he wanted to speak with me about helping us with, ah, illegal drugs and he wanted to – he wanted me to contact an additional agency.

[The State]: When he did not provide you information in regards to those drugs, what did you do?

McKay: I ended the interview after speaking with him. I shut the tape off.

[The State]: Why did you end the interview?

McKay: It was going nowhere. * * * It, ah, so I told him I was just gonna end the interview. * * * Ah, at that point I, I shut the recorder off.

[The State]: What happened next?

McKay: Ah, he made a, an outburst or a statement to me, ah, with the other officer in the room – you'll have to excuse the statement.

The statement was McKay, you know I sell that shit and I fuck with

the hos. You know, you know. With the other officer in the room.

{¶ 40} On re-direct, the prosecutor covered essentially the same ground. T. 449-451. In both instances, viewed in context, the prosecutor was not attempting to elicit an opinion on Howard's veracity, but rather to explain why appellant's admission was not recorded. A police officer is permitted to explain the steps he pursued in his investigation of a case. *State v. Wilson*, 8th Dist. Cuyahoga No. 96380, 2011-Ohio-102 ¶ 34. We find this line of questioning was not improper.

Mail from Appellant's Bedroom

{¶ 41} Appellant next argues the state introduced exhibit 14q, a photo of mail from the probation department found in the basement, in violation of the trial court's ruling on appellant's motion in limine to keep this piece of evidence out. We disagree.

{¶ 42} First, "[w]here a court, in its discretion, chooses to rule on a motion in limine, that ruling is "tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." *City of Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶ 43} Next, the prosecutor did not act against the trial court's preliminary ruling. The court ruled the state could not introduce evidence tending to show appellant was on probation, but that the state could ask witnesses whether mail addressed to appellant was found in the basement. T. 349-352. McKay testified state's exhibit 14q was a

photograph of mail found in the basement addressed to appellant. There was no mention of who the mail was from, and at the close of its case-in-chief, the state did not request that the exhibit be entered into evidence. We find no improper conduct.

## Ammunition and Crack Pipe

{¶ 44} Appellant next argues the prosecutor improperly cross-examined his mother, Tira Holland, about ammunition and a crack pipe found in the home because the trial court had excluded the items as exhibits at the close of the state's case-in-chief.

{¶ 45} On cross-examination, while going over the inventory sheet from the search of the 9th Street residence with Holland, the prosecutor did pose a question about the crack pipe and ammunition. Before Holland answered, counsel for appellant objected, and the objection was sustained. T. 680-681. The jury was instructed on two different occasions that if the court sustained an objection, it could not speculate what the answer may have been. T. 183-184, and 724-725. A jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. Thus even if raising the question was improper, appellant still has not demonstrated prejudice.

## Closing Argument

{¶ 46} Finally, appellant argues the prosecutor committed misconduct when in closing argument she argued both Sergeant McWilliams and Officer Munich heard appellant admit to possessing 31 grams of heroin. According to appellant, this is not a proper statement of the evidence. The record reflects however, that this is an accurate statement of the testimony. T. 269 and 475. Appellant's argument is not well taken.

{¶ 47} Having found neither misconduct, nor prejudice as a result, we overrule the second assignment of error.

III

{¶ 48} Appellant next argues he received ineffective assistance of counsel. Specifically, appellant argues counsel rendered ineffective assistance by failing to object when the prosecutor sought an opinion from Detective McKay regarding appellant's veracity and when the prosecutor questioned appellant's mother about the ammunition and crack pipe. Appellant further faults trial counsel for failing to use a peremptory challenge to remove Juror 218, and by failing altogether to challenge Juror 221. We disagree.

{¶ 49} An allegation of ineffective assistance must be measured against the standard set out in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
>
> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a

reasonable probability that, were it not for counsel's errors, the result

of the trial would have been different.

{¶ 50} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987).

{¶ 51} First, as discussed at length in the second assignment of error, the record reflects counsel did in fact object to the prosecutor's questioning of Detective McKay in regard to appellant's veracity, as well as questions to appellant's mother regarding the crack pipe and ammunition. T. 378-382, 680-681. The trial court sustained counsel's objections to improper questions. Appellant's arguments are not well taken.

{¶ 52} Next appellant faults counsel for failing to use peremptory challenges to remove jurors 218 and 221. However, counsel's failure to exercise peremptory challenges is not ineffective assistance where jurors indicate they can put their personal feelings aside and judge the case on the merits. *State v. Davis*, 62 Ohio St.3d 326, 350, 581 N.E.2d 1362, 1381-1382 (1991)

{¶ 53} Under questioning by both the trial court and defense counsel, juror 218 assured the court and counsel that she could fairly and impartially judge the testimony of each witness as directed by the court and would alert the court if at any point she felt she could not. T. 162-166. Likewise, although juror 221 advised the court she had a family member die of a heroin overdose, during a sidebar conversation she nonetheless advised the court and counsel that she would try to be fair and impartial.

{¶ 54} Voir dire is largely a matter of strategy and tactics. *State v. Keith*, 79 Ohio St.3d 514, 521, 684 N.E.2d 47(1997), certiorari denied, 523 U.S. 1063, 118 S.Ct. 1393, 140 L.Ed.2d 652(1998). Decisions on the exercise of peremptory challenges are a part of that strategy. *State v. Goodwin*, 84 Ohio St.3d 331, 341, 703 N.E.2d 1251(1999), certiorari denied, 528 U.S. 846, 120 S.Ct. 118, 145 L.Ed.2d 100. Trial counsel, who observe the jurors firsthand, are in a much better position to determine whether a prospective juror is qualified to be on the panel. *Keith* at 521.

{¶ 55} Counsel for appellant interacted with and observed jurors 218 and 221. We find nothing on the record to support a finding that failing remove these jurors was outside the realm of effective representation and sound trial strategy. Accordingly, appellant's third assignment of error is overruled.

IV

{¶ 56} In his fourth assignment of error, appellant argues the trial court erred in admitting a text recovered from appellant's cell phone from "O'Burn." The incoming text from "O'Burn" asked where appellant lived and appellant responded he lived at his mother's home on 9th Street. Appellant argues this text is protected attorney-client communication. We disagree.

{¶ 57} At trial, counsel for appellant objected to the admission of this text and argued "I'm guessing that's Gene O'Byrne" and that this "could potentially be attorney-client privilege." T.391. The trial court recognized that Gene O'Byrne is a local attorney, but also noted that counsel was only guessing that Attorney O'Byrne sent the text.

{¶ 58} "The burden of showing that testimony [should] be excluded under the doctrine of privileged attorney-client communications rests upon the parties seeking to

exclude it." *Lemley v. Kaiser*, 6 Ohio St.3d 258, 263-264, 452 N.E.2d 1304 (1983). Appellant's objection consisted of mere speculation. Appellant therefore failed to establish that the text was sent as part of privileged attorney-client communication. The fourth assignment of error is overruled.

V

{¶ 59}  Appellant next argues the trial court abused its discretion when it imposed maximum consecutive sentences. Specifically, he argues he is not the worst type of offender, and that his actions do not constitute the worst form of offense. He argues, therefore, that the trial court abused its discretion in imposing maximum consecutive sentences because the sentence is disproportionate. We disagree.

{¶ 60} First, we review felony sentences not for an abuse of discretion, but rather using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. R.C. 2953.08(G)(2)  provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.

{¶ 61} Pursuant to *Marcum*, this court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the

syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477 120 N.E.2d 118.

{¶ 62} As long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12, a trial court's imposition of a maximum prison term for a felony conviction is not contrary to law. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16.

### Applicable Sentencing Ranges

{¶ 63} Appellant was convicted of trafficking in heroin, a first degree felony. The sentencing range for a first degree felony is 3, 4, 5, 6, 7, 8, 9, 10, or 11 years. R.C. 2929.14(A)(1). Appellant received 11 years for this conviction. Transcript of sentencing, 22.

{¶ 64} Appellant was also convicted of three counts of trafficking in heroin, felonies of the fourth degree. The sentencing range for a felony of the fourth degree is 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 months. R.C. 2929.14(A)(4). Appellant was sentenced to 18 months on each count. Transcript of sentencing 22.

{¶ 65} Appellant's sentences are therefore within the statutory range for each offense.

### Maximum Sentences

{¶ 66} The purposes and principles of felony sentencing are set forth in R.C. 2929.11(A) and provides that a sentence imposed for a felony shall be reasonably

calculated to achieve the two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶ 67} R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. Appellant does not argue the trial court failed to make findings where required, rather, he argues the sentences are disproportionate.

{¶ 68} Under R.C. 2929.12(B), among the various factors that the trial court must consider and balance to determine if the offender's conduct is more serious is that the offender committed the offense for hire or as a part of an organized criminal activity, which is clearly the case here. Under this same section, the trial court could consider any other relevant factors as well. The trial court noted appellant trafficked heroin in the presence of his children and further, continued to sell heroin even when he knew people were overdosing on what he was providing. Transcript of sentencing 19 -20.

{¶ 69} Under R.C. 2929.12(C), the trial court is also to consider any factors that render the offender's conduct less serious. None of the factors listed in R.C. 2929.12(C) apply in this matter.

{¶ 70} Under R.C. 2929.12(D) the trial court is to consider all of the listed factors that apply to the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes.

{¶ 71} Three of the five factors apply here. First, "[a]t the time of committing the offense, appellant  was under release from confinement before trial or sentencing; was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code; was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense * * *."  Appellant was on both parole and intensive supervision probation at the time he committed these offenses. Transcript of sentencing 5, 20. Next, appellant has a history of criminal convictions. Transcript of sentencing 18-19. Third, appellant has not responded favorably to sanctions previously imposed by criminal convictions. Transcript of sentencing 19-20.

{¶ 72} Finally, R.C. 2929.12(E) lists factors the trial court is to consider to determine is the offender is less likely to commit future crimes. None of the listed factors apply here.

{¶ 73} The record supports the trial court's imposition of maximum sentences. Appellant is more likely to recidivate, and his conduct was more serious.

Consecutive Sentences

{¶ 74} Appellant also challenges the consecutive nature of his sentences. Again, he does not argue that the trial court failed to make the appropriate findings. Instead, he argues consecutive sentences are inappropriate.

{¶ 75} When discretionary consecutive sentences are imposed, R.C. 2929.14(C)(4) requires the following:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 76} In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus, the Supreme Court of Ohio held: "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings."

{¶ 77} Here, during the sentencing hearing the trial court found appellant had a lengthy criminal record, was on judicial release when he committed these crimes, as well as on intensive supervision probation and house arrest. The trial court further noted appellant trafficked and possessed heroin in the presence of his children, and was apparently indifferent to the impact of heroin on its victims and the community. T. 17-23. The appropriate findings were further made in the court's sentencing judgment entry. The record therefore shows that the trial court considered the required factors set forth in R.C. 2929.14(C)(4) in imposing consecutive sentences.

{¶ 78} Indeed, appellant appears to agree that the trial court uttered the appropriate "magic words" to impose consecutive sentences. Appellant's brief at 16. "Where a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2nd Dist. No. 2015-CA-24, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38.

{¶ 79} Here, we find ample evidence on this record to support the trial court's imposition of consecutive sentences.

{¶ 80} Appellant's sentence is not contrary to law, and the trial court properly considered all relevant factors to impose maximum consecutive sentences, and the record supports the trial court's findings. Accordingly, appellant's fifth assignment of error is overruled.

VI

{¶ 81} In his final assignment of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 82} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Appellant's Convictions

{¶ 83} Appellant was convicted of trafficking in heroin, in the vicinity of a juvenile, a felony of the first degree, in violation of R.C. 2925.03(A)(2)(C)(6)(e). To prove the charge, it was necessary for the state to produce evidence to show that in the vicinity of a juvenile, appellant prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed heroin and that the amount of heroin was at least 10 grams, but was less than 50 grams.

{¶ 84} Appellant was also convicted of possession of heroin, a felony of the second degree, in violation of R.C. 2925.11(A)(C)(d). To prove this charge, the state had to produce evidence to show appellant knowingly obtained, possessed, or used heroin, and that the amount of heroin was at least 10 grams, but was less than 50 grams.

{¶ 85} Finally, appellant was convicted of three counts of trafficking in heroin in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(1)(C)(6)(b). To prove the charge, the state needed to produce evidence to show appellant knowingly sold, or offered to sell heroin, and that he did so in the vicinity of a juvenile.

The Evidence

{¶ 86} Hall made three controlled buys from appellant while wearing video and audio recording equipment. T. 227, 233. The jury viewed each video. Hall testified children were present during each buy. During one buy Detective Minich testified he was able to observe the exchange cash for drugs as well as the presence of children. T. 237-238.

{¶ 87} Following the buys, officers executed a search warrant at appellant's mother's home where appellant was staying in the basement. In one of appellant's shoes,

officers found 33 grams of heroin. Officers also discovered two scales, and tear-off baggies used for packaging drugs, one of which tested positive for heroin. Appellant further made two incriminating statements during the search. First he stated had just purchased 35 grams of heroin, that it was located in his basement bedroom, and that he would tell officers who he purchased it from. T. 269-270. Second appellant told that McKay "you know I sell that shit  * * *." T. 382.

## Appellant's Arguments

{¶ 88} Appellant questions the credibility of Hall, suggests others who could potentially be to blame for possession of the heroin, scales, and tear-off baggies, and states he was found not guilty of possessing the Suboxone strips that were also located in the home.

{¶ 89} First, appellant was not charged with possessing Suboxone. Second, the jury heard and rejected appellant's alternative arguments as to who could be responsible for the heroin and drug trafficking implements. Credibility determinations, however, are the sole province of the jury. Given the overwhelming evidence of appellant's guilt in the form of three videotaped buys and appellant's own admissions, we cannot say the jury lost its way in making its credibility determinations.

{¶ 90} The state presented ample evidence to support appellant's convictions and the jury did not lose its way in so convicting appellant. The final assignment of error is overruled.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.

EEW/rw 125